IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**RECEIVED**

SEP 11 2012

**THOMAS G BRUTON
CLERK, U S DISTRICT COURT**

LINDA REED )
)
       Plaintiff )
)
)
           v. )
)
State of Illinois )
official and individual capacity )
Judge Sidney A. Jones III )
Individual and official capacities )
Sanchez Daniel and Hoffman LLP., )
Elaine Davenport )
Liberty Mutual Insurance Company and )
Karen Swafford )
       Defendants )

12cv7274
Judge Sharon Johnson Coleman
Magistrate Susan E. Cox

**COMPLAINT**

NOW COME Plaintiff, Linda Reed, pro se and complaining of Defendants, State of Illinois,

Sidney A. Jones III, Sanchez Daniel and Hoffman LLP., Elaine Davenport, Liberty Mutual Insurance

Company and Karen Swafford.  Linda Reed. state as follows:

**Jurisdiction and Venue**

1.   This Court has jurisdiction of the action pursuant to 28 U.S.C. 1331 and 1343 (a)(3)  Federal

Question. Venue is proper under 28 U.S.C. 1391 (b). The events giving rise to the claims

asserted herein occurred within district.   This Court has jurisdiction of this action under title II

of the ADA, 42 U.S.C. §§ 12131-12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §

794a, and 28 U.S.C. §§ 1331  1983 and 1345.  The Court may grant the relief sought in this

action pursuant to 28 U.S.C. §§ 2201 and 2202. .

1

**PARTIES**

2. Plaintiff, Linda Reed pro se a 59 year-old, citizen of the United States, is a resident of Milwaukee Wisconsin. Plaintiff has impairments that substantially limit one or more major life activities. Plaintiff is an individual with a disability, as defined by the ADA and Rehabilitation Act.

3. Sanchez Daniel and Hoffman LLP is a law firm and, in its capacity, provided legal services to Liberty Mutual Insurance Company, which designated Elaine Davenport attorney for its client defendant Darlene Moore.

4. Sidney A. Jones is an Associate Judge Municipal presiding over case number --- Reed v Moore He is an employee acting under color of law when performing his duties, whether he acts in compliance with state law, contrary to it, or exercise professional discretion. Sidney Jones acted in an individual capacity.

5. Insurer Liberty Mutual hired Elaine Davenport and Sanchez Daniel and Hoffman to represent the insured, Darlene Moore

6. Karen Swafford is the Claim Adjuster who monitored the case for Liberty Mutual

7. Plaintiff seeks to hold state officials/ State of Illinois accountable for their abuse of their broadly delegated, uncircumscribed power to effect the deprivation at issue. The State of Illinois receives section 504 funds.

**BACKGROUND**

Plaintiff Lind Reed pro se filed an action on April 30, 2009 to recover for personal injuries sustained from Darlene Moore's negligence. The case was place on the arbitration track by the Clerk of Court in Cook County. The plaintiff served the defendant interrogatories. The defendant did not

2

comply and was barred from testifying at arbitration and trial. The plaintiff was awarded $20,000.00 by a panel of three arbitrators. The defendant filed a Notice of Rejection. The defendant filed an application to sue and defend as an indigent person. Plaintiff observed the application in the case file and then notified the court that the application was perjured. Plaintiff had personal knowledge that the defendant was not indigent. The case went to trial. Verdict for the defendant.

Judge Jones is corrected in his Memorandum Opinion and Order (MOO) "plaintiff takes issue with the entirely of the process which led to the trial, and virtually every perceived procedural step in bring the case to trial." Plaintiff's constitutional rights to due process, statutory, procedural process and equal treatment by Judge Jones were violated by the judge. The US constitutional guarantee 's plaintiff's right

A pattern of discrimination was beginning to take shape, for the attorney and against the plaintiff pro se. Judge Jones issued forty one (41) or more separate orders from the court, Judge Jones granted whatever the Attorney wanted. Compared to the three (3) orders the plaintiff was granted. Plaintiff objected to all non procedural, non statutory, constitutional violating orders. -92.68 % against the plaintiff.

Judge Jones has status, he is white, a presiding judge, social status, he has membership in an exclusive clubs etc., Judge Jones violated his oath of office. Plaintiff asked him to rescue himself.

Ms. Davenport is white, an attorney and has social status. She works for "Sanchez Daniels &J Hoffman LLP a full service civil practice law firm with an A.V. Martin dale-Hubbell rating, with over 300 years combined experience. The Firm specializes in personal injury defense with an emphasis in the fields of medical malpractice. Sanchez Daniels & Hoffman LLP is one of the largest minority-owned and controlled law firms in the United States." There client list is extensive and impressive and she is under oath.

Compared to the plaintiff, pro se, indigent, has a mental and a physical disability, black and has

no social or professional status she is not an attorney. The US Constitution guarantees her a right to be in the courtroom and to be heard, there she stood. Judge Jones can not treat that which is not the same the same.

Plaintiff sent Attorney Davenport 251 emails trying to move this case to conclusion and protect her constitutional rights. Attorney Davenport made 90 emails contact to Ms. Reed. (Sanchez Daniel and Hoffman/ John Huntley was copied on all emails). Karen Swafford Sr. Claims Specialist II/ Liberty Mutual Insurance Company 3 emails to and three emails from.

Plaintiff was diagnosed with an untreatable neurological disorder which affects her speech and body movements, which leaves her primary disability untreatable. Similar to the heart, which beats involuntary, so does plaintiff's neurological disorder . The mouth, tongue, face and eye are moving and the plaintiff is unaware. Under extreme stress Plaintiff experiences pausing, then a crumpling of the face then her tongue protrudes in and out of her mouth, then it starts a rhythmic movement across the gums and then smacking. The plaintiff experiences choking and involuntary grunting and noises. She experiences movement in the limbs which are rhythmic also. In general plaintiff experiences moving in the mouth, face, tongue, throat all of the time.

Plaintiff also suffers from a untreatable mental disorder. Plaintiff condition was worsen by the stress and the lack of accommodations for her disability. In order for the plaintiff to persuade and convince the trial court that she had a disability she sent OCJ a detail email describing the plaintiff's sever speech disorder. Plaintiff was forced into revealing her private health issues on the internet which violated the HIPPA Act and her right to privacy. Judge Jones denied plaintiff request for accommodation for her disabilities.

Judge Jones stated in his MOO that he accommodated plaintiff's "physical" disability by allowing plaintiff telephone conferences. Plaintiff states she did not have a physical disability at the time Judge Jones allowed telephone conference. There is was never a request for accommodations for

4

a "physical" disability. Plaintiff denies that she had a "physical" disability at the time.

In April 2011 Plaintiff was diagnosed with an untreatable neurological disorder. There was never any discussion between Judge Jones and the plaintiff regarding accommodation her disability. Plaintiff emailed OCJ and request accommodation for her speech impediment affects her speech and body movements. From 5/17/ 2011- 3/2012 plaintiff sent approximately 61 emails begging for accommodations for her disability. Plaintiff was ignored, denied or presented with superficial accommodations which were inadequate to sufficiently accommodate her disability and to gain participation in the legal process.

The plaintiff had to make numerous additional step by sending follow up emails to help her gain access to the court. No other person is require to make the many steps the disabled plaintiff had to make, in order to gain access to the court. When she got in the courtroom she was not able to participate fully because of the denial of accommodations for her disability.

The procedural hurdles that the plaintiff had to jump through just to "get in" the courtroom were astronomical and to no avail. No other person is required to make the many steps the disabled plaintiff had to make, in order to gain access to the court because of a disability. Plaintiff request was allowed in part and denied in part. Attorney Davenport was not held to the same standards.

For five months before, at and after trial, plaintiff was denied accommodations for her disability. Not until Judge Jones Memorandum Opinion and Order (MOO) September 28, 2011 did Judge Jones address plaintiff's disability and the severity of it. Judge Jones stated "The court determined not to entertain oral argument because the plaintiff has developed a severe speech impediment that prevents her from communicating in any vocal fashion." Judge Jones denial of plaintiff accommodation for her disability prevented an accurate and complete transcript of the trial proceedings because plaintiff used hand signals, made grunting sounds and her speech was unintelligible at times.

As the trial moved on, the plaintiff's neurological disorder kicked in. Plaintiff could tell that she was having an attack because plaintiff saw the gum, she was chewing to control the movement in her mouth and tongue fall toward the floor. The involuntary movements were felt in other part of plaintiff's body. Plaintiff could still hear Judge Jones yelling, "Ms. Reed.... ." Plaintiff could hear the sounds coming from her body involuntarily. Plaintiff takes clues from on lookers. The jury seemed to be taken aback. Judge Jones exacerbated her condition. Judge Jones' M and O. (page 5 paragraph 2) described plaintiff inability to effectively communicate at trial He acknowledges that plaintiff has a disability which affected her speech. He acknowledges the uncontrollable pauses. (Page 6 continuation of paragraph 2 of page 5) Judge Jones talked about the noises plaintiff was making. Plaintiff was anxious, embarrassed, humiliated, degraded in front of the jury and she began to cry uncontrollably while Judge Jones watched and stood silent or yelled at the plaintiff to move on etc.

Judge Jones could see for himself the plaintiff's disability. He stood silent; he ignored plaintiff's need for accommodations. Judge Jones stated in his MOO he treated plaintiff who is disabled "as would any other individual." The Equal Protection Clause guarantees "that people of different circumstances will not be treated as if they were the same. Judge Jones violated plaintiff rights to accommodations for her disabilities.

Plaintiff's case was subject to Judge Jones' disinterested, inpatient, impartial demeanor in the presence of the jury prejudiced her case. The jury is charged with the duty to judge "credibility." Judge Jones shouted from the bench, "Move on Ms. Reed""irrelevant." "anything else Ms. Reed" "You have 10 seconds and we are going to move on Ms. Reed." Judge Jones behavior prejudiced plaintiff's case. He appeared to plaintiff that he was impatient, and the jury could readily see that he was. There are no court transcriptions can describe what was happening in the courtroom. Judge Jones subjected the plaintiff to stares, glares, body posturing, attitude, hitting his desk, lean backward in his chair, then leaning forward over his desk yelling. He turned his chair side way and crossed his legs at his knees.

Plaintiff filed a motion for a new trial. Status hearings were scheduled. Plaintiff requested accommodations for her neurological/speech disorder to participate in the status hearings. Plaintiff objected at the status hearing. Judge Jones continued to ignore and deny her accommodations for her disability after witnessing the plaintiff's speech disorder at trial.

Plaintiff contacted Ocj prior to each status hearing and requested accommodations via email. OcJ said, Judge Jones has "discretion" over granting accommodations.

On or about, July 6, 2011 Plaintiff overheard a conversation between Judge Jones and the attorney The judge and the attorney have had ex parte communications.

July 7, 2011 Judge Jones had to reschedule the status hearing again because plaintiff was denied accommodations for her disability. Judge Jones said that the court reporter did not get everything that plaintiff was saying but him "got the gist of it." When plaintiff received Judge Jones' order there was some discrepancies in it.

At the August 11, 2011 status hearing Judge Jones continued to deny plaintiff request for accommodations the hearing had to be rescheduled again. He then took away Elaine Davenport right to speak for her client; in a effort to accommodate plaintiff neurological disorder

. Plaintiff contacted OCJ about the misunderstanding. She was able, at best, to attain limited, ineffective communication with the Judge Jones. She requested a TTY be sent to her home but was denied.

## JUDGE JONES DISCRIMINATED AGAINST THE PLAINTIFF

Throughout the case Judge Jones showed favoritism toward Attorney Davenport. Judge Jones allowed the Attorney to fore go all of the procedural process as outlined in the Illinois Supreme Court Rules, ILCS etc. On June 2, 2010 appeared in court and presented Judge Jones its Motion for leave to

Appear and to vacate any "technical" defaults. Judge Jones granted Attorney Davenport "any and all defaults". The Attorney Davenport filed an Answer to the plaintiff on June 12, 2010 well beyond/outside of the statutory requirements to answer plaintiff's complaint. Attorney Davenport and the Judge had some non verbal communication. The attorney just passed her paper work to the judge and the judge looked at them and said, "Now you know" The attorney replied, "I know. I know" The Plaintiff said I object. The Judge stared at Plaintiff without saying a word. Then he turned to the defendant and they finished their business. It was very uncomfortable and intimidating for the plaintiff when the Plaintiff objected. It is the Plaintiff opinion that the Judge was clearly angry. The judge did not allow plaintiff her due process.

. Attorney Davenport never motioned court to vacate discovery order sanction or reopen discovery (3 times). Judge Jones allowed extensions after extensions in favor of the attorney. Discovery was closed again by Judge Jones (3/25/2011). He stated that if discovery was not completed there would be consequences. He reopened discovery for Attorney Davenport with no consequences.

August 2011 Attorney Davenport addressed the accommodations requested of the plaintiff. Attorney Davenport stated, " Plaintiff was provided all accommodations requested for her disability" Attorney Davenport stated that Judge Jones did accommodate the plaintiff's disability.

The American with Disability Act does not require plaintiff to reveal his or her request for accommodations to the defendant nor its attorney. It is confidential. However, she does admit that plaintiff had an obvious disability. The two of them, Judge Jones and Attorney Davenport always backed each other up, even when Davenport had no idea of the request for accommodations by the plaintiff.

Plaintiff contacted OCJ inquiring about whether or not she released information to the Attorney about my request for accommodations. Mary Brice, OCJ replied back to plaintiff in a written email saying "no," she have had "no communication with Attorney Davenport." Yet the Attorney makes

8

statements in the affirmative that Judge Jones accommodates plaintiff's disability when she had absolutely no knowledge. She had not right to intervene in this matter.

Firstly, Judge Minella and the arbitration process make the case ready for trial before it leaves the assignment room. (2). Discovery was closed by Judge Minella in accord with the procedural process of arbitration. The rules state if there are any issues in the case regarding arbitration they are to be heard in the assignment room not the trial court room. Judge Jones stated, "this court is unaware, particularly since it was decided in the assignment room, it was to be made ready for trial."

At the case management hearing in May 2010, Judge Jones issued an order setting a firm court date of July 15, 2010 "to Stand." The trial date was set 4 months after the case management date because the allowance the judge awarded the attorney. Upon Attorney Davenport's appearance Judge Jones "stroke" the trial date to allow the Attorney in. There was another trial date set for August 15, 2010. The date was stroke in favor of the defendant.

Attorney Davenport was allowed to enter the case without the proper statutory or procedural requirements which violated plaintiff constitutional rights to fair and equal treatment.

Judge Jones stated in his MOO, "This court is unaware of the arguments or the basis of the denial, but concludes that the judge (Minella) objective was to allow the case to proceed as much on the merits as possible." Judge Minella was very specific when she wrote her order to deny defendant's motion to removed discovery sanctions and to get an attorney." There was never a hearing held regarding merit. The plaintiff was denied due process.

Plaintiff advised Judge Jones of the perjury. Judge Jones stated in his MOO that when he learned this case was brought against the defendant as a homeowner he inquired of the defendant whether she had homeowners' insurance and instructed her to notify her insurance carrier of the pendency of this action." Judge Jones advocated for the defendant, once she admitted that she had homeowners' insurance through Liberty Mutual Insurance Company. He ignored the perjury; Attorney

9

Davenport ignored the perjury. Attorney Davenport failed to rectify the perjury when she did not pay the $200.00 notice of rejection fee. Attorney Davenport never turned over to plaintiff the defendant insurance polices.

Judge Jones, Attorney Davenport and Liberty Mutual Insurance Company remained silent and acted as if the plaintiff was not involved in this case. The judge acted on the attorney motions without any input from the plaintiff. Plaintiff asserted her constitutional rights by objecting each and every time. Liberty Mutual Insurance Company and Karen Swafford stood by, watched, monitored and paid Attorney Davenport and Sanchez, Daniels and Hoffman while plaintiff's constitutional rights were violated.

The perjury issue was important, it determined whether or not the case went to trial or to the Appellate Court. Liberty Mutual Insurance Company and Karen Swafford paid the lawyers' bills to hired a court reporter only to ambush the plaintiff at the status hearings.

Ms. Reed was extremely upset and traumatized by the judge, attorney and the rest of the defendants misconduct in the court. Plaintiff did all she could to preserve her constitutional rights and to show respect for the court. Instead, of finding relief for the negligent act of Defendant Moore, she had to endure the stress of the unnecessary communication, unnecessary delay and needless increase in the cost of litigation, denial of accommodation for her disability as her disorder worsened. Moreover, as the hearing dragged on, she grew more frustrated, anxious, harassed and upset.

Liberty Mutual Insurance Company could have questioned the amount of hours and the reasons Attorney Davenport and Sanchez Daniels and Hoffman LLP were billing the insurance company in order to prevent the violation of the plaintiffs constitutional rights to a fair and speedy trial by acting diligently. There is no record of plaintiff delaying the case by asking for extensions.

The judge ordered Plaintiff and Attorney Davenport to file briefs inference to plaintiff request for a new trial. Not until after the plaintiff filed her appeal did Attorney Davenport mention that she

10

motioned the court orally and Judge Jones granted her motion to lift a barring sanction.

Judge Jones treated the plaintiff differently from the Attorney Davenport. The plaintiff had to push hard back with the Illinois Supreme Court Rules as the judge used "discretion" only in favor of the attorney, even when the "discretion" was against plaintiff's well established constitutional rights.

The defendants acted concertedly for the purposed of blocking, denying, concealing, and withholding pertain information which violated the Plaintiff constitutional rights which results in the defendants liability. The defendants overlooked , turned their heads when Attorney Davenport did not disclose to the court that defendant, Moore was not indigent. Attorney and Judge Jones violated their duty and oath. The defendants knowingly entered into their relationship with evil intentions to prevent plaintiff from a fair trial. Judge Jones have a duty to safeguard plaintiff rights. The Insurance Company, Sanchez Daniels and Hoffman, Karen Swafford all had duties to prevent the violation of the plaintiff 's constitutional rights.

The attorney chimed in to defend and support Judge Jones discrimination and the violation of the plaintiff's constitutional rights. Each and every time, even though, Attorney Davenport had no knowledge of whether or not the judge violated plaintiff constitutional rights, she chimed in.

Judge Jones issued an order ordering plaintiff to send her response to Davenport's brief to the adverse attorney Attorney Davenport. Plaintiff faxed the brief to Attorney Davenport in a timely and place the brief in the USPS. Davenport claimed that she did not receive all of the plaintiff brief. Judge Jones ruled on Plaintiff's motion for a new trial without plaintiff complete brief. Plaintiff sent a fax to Judge Jones and Attorney Davenport stating Davenport was trying to "sabotage" her case. Judge Jones was silent and went on with his process of denying the plaintiff motion for a new trial without plaintiff entire motion. Again, plaintiff's due process as violated.

.In order for the plaintiff to file a complete record on appeal plaintiff had to motion the appellate court for leave, while time tolled, to supplement the record on appeal. Judge Jones had to include in the

11

records information plaintiff submitted to the attorney, via his order, that he had not received.

Ms. Reed felt violated , betrayed by the judge and the legal system, discouraged by the behavior of the defendants as she sat and watched them violate her constitutional rights. The plaintiff contacted, Illinois Attorney General office, Judge Wright's office, Judge Evans office and other office in the Daley Center to get assistance for the discrimination she was undergoing. Plaintiff contacted Senator McCain office in Washington D.C., soliciting assistance to stop the discrimination that she was undergoing. Senator McCain was instrumental in getting the ADA passed. The plaintiff file a discrimination claim with the Department of Justice.

The plaintiff went into a deep depression peppered with argue. Plaintiff lost confidence in herself and the legal justice system which drove her into isolation and a state of mistrust coupled with exacerbation of her neurological disorder. Plaintiff was adamant in standing for her rights and it turn lost the support of her family and friends. The trial and discrimination took a toll on the plaintiff's physical and mental health.

Plaintiff's neurological disorder and her other disabilities worsened because of the stress of the violation of plaintiff's constitutional right. The physicians hoped that the condition would reverse itself . Without proper rest plaintiff's neurological disorder worsen and has yet to reach a plateau. Plaintiff watched her constitutional rights being violated and her health was going downhill. Plaintiff states that it was devastating for her to watch the very process that guarantees her equal rights and protection under the law failed to protect her.

## THE STATE OF ILLINOIS DISCRIMINATED AGAINST PLAINTIFF

I.       Ms. Reed asked for copies of her rights under Illinois ADA provisions and was never provided with notice of her rights. Plaintiff filed a complaint and the Ocj ignored the complaint. She never received an answer to her complaint. On the quest to preserve her constitutional rights OcJ told

her (1) that OcJ had spent many hours on this case. Yet plaintiff was denied accommodations 2) plaintiff asked for a TTY. OCJ told plaintiff that the ADA law doesn't require that they install telephone lines in plaintiff's house. Plaintiff sent her an email from a speech specialist which stated that you just plug the device into the wall and it is ready.

II.     The Cook County Courts and the State of Illinois do not provide assistance for disabled people who want to appeal the trial court verdict. Plaintiff contacted Ocj for assistance in filing her appeal and was denied. Plaintiff disability accelerated Mary Brice said that she did not work on appeals. Plaintiff was denied accommodations for her known disability. Plaintiff needed assistance with the request for preparation of record. There is an option in which you can have the records Certificate in Lieu of Record on Appeal pursuant to Illinois Supreme Court Rule 325. When the record preparation is complete the appeals section calls you to pick them up at the Daley center and delivery them to the Appellate Court. Plaintiff informed the clerk that she was disabled and would like to have the records sent to her. Plaintiff was told that she was responsible to pick up the records and deliver them to the Appellate Court.

Linda Reed sent and or replied to 66 emails, not including the telephone calls made by plaintiff and or other people on behalf of plaintiff) to Pat O'Brien, Appeals Division citing Illinois Supreme Court Rule 325, Certificate in Lieu of Record . Once Pat O'Brien got a clear understanding of the law she prepared the record. Plaintiff requested that the records be sent to the plaintiff in Milwaukee Wisconsin. The request was denied Deputy O'Brien would not accommodate the plaintiff with a box to put the records in. This cause unnecessary delays and expense that plaintiff could not afford and frustration to plaintiff. . The State of Illinois does not train, failure to train, supervise, or discipline their employees which cost delayed litigation, further expense to an low income disable person, Plaintiff believed that her appeal was at risk because of the many hurdles she had to overcome with her

disability.

III.          The State of Illinois discriminates against indigent people and disabled people who do not live in the state of Illinois who have legitimate legal business in the court. Plaintiff contacted Carpal, and other legal assistance agencies for low income people, they were either closed or the telephone numbers were disconnected. Plaintiff was denied legal assistance because she is not a resident of Illinois. The State of Illinois provides legal service such as Carpal to assist Illinois residents with low income and denies non residents who meet the poverty guidelines access to legal assistance in the State of Illinois where they have business. There is also a telephone help line where Illinois residents can call an get help. Plaintiff called and was declined help because she does not live in the state of Illinois. The plaintiff constitutional rights to bequeath equal protection as well as interstate privileges were violated. Plaintiff was denied adequate help in filing her lawsuit because of the residence requirement she meets the income eligibility. Illinois failed to provide access to law library, telephone access. The court could order that system improved. Plaintiff disabilities were exacerbated and she was unduly burdened by the lack of accommodations and the discriminatory practices and policies of the State of Illinois. Illinois Disability Rights program would not help disabled plaintiff.

The State of Wisconsin requires that an attorney gets special permission to practice law in its state but does not allow non residents low income or otherwise any assistance to gain access to its court when they have legitimate business in it state. The plaintiff was required to submit the Illinois Jury Instructions to the court. She searched Marquette University Law Library for the instructions. Their library was inadequate, did not have up to date instructions. It is very frustrating and was a financial burden on the plaintiff. The State of Illinois could use section 504 money to order video cameras in the court whenever a pro se litigant is presented in order to prevent the allegations in this complaint and to make sure their constitutional rights are not being violated. Further the pro se litigants could be charges

14

a nominal fee for the CD ($3.00). This will not be overly burdensome on the court or the state.

IV.     State of Illinois violates disabled people right to privacy by failing to provide necessary avenues to submit medical information in a effort to request accommodations for their disabilities to access the court. The Plaintiff had to sent her request for reasonable accommodation through email which is not a protective mean for providing medical information to obtain accommodations for her disability. The plaintiff was unable to avoid placing her private record on the internet to gain access to the court and to request accommodations for her disability. The State of Illinois can provide accommodations for the disabled by acquiring a private secure method. The State of Illinois deprived plaintiff of liberty. 14th Amendment

V.      Judge Sidney Jones and the State of Illinois have discriminated against speech impaired people by failing to provide appropriate auxiliary aids and services where necessary for effective communication, 28 C.F.R. §§ 35.160(a), 42.503(b), (e), (f); by failing to provide notice to Linda Reed of her rights under the ADA, 28 C.F.R. § 35.106; and by failing to make available, to speech impaired people information about the existence and location of accessible services, 28 C.F.R. § 35.163(a). The State of Illinois discriminates against people with disabilities by failing to provide accommodations in the transition from trial court to the appeals process.

In re the Estate v Eddie Tharbs case # 09 P 2080 and In re the Estate v Evia Tharbs case # 05 P 5236. This case is not related to the above matters however it is another example of how the State of Illinois discriminates against indigent, elderly and my parents happens to be black. However, plaintiff has specific knowledge that this kind of constitutional violations happens in other courts. Plaintiff's, her parents and siblings constitutional rights were violated in Cook County Probate Court. Her constitutional rights along with her parents rights to due process and statutory procedural and equal protection rights were violated. Plaintiff's parents case (s) were in probate court for years without an

attorney. The plaintiff was not provided with notice of proceedings. Plaintiff's elderly disabled father did not know that his wife was involved in the Probate Court for years. Plaintiff, Linda Reed and other siblings were not notify that her mother was involved in the Probate Court. Plaintiff's parents were denied access to the court, to due process, and equal protection. The probate court did not protect plaintiff's inheritance. Once notified plaintiff was promised by the guardian et litem that they were there to help plaintiff's parents.

After months of watching the court and the guardian(s) body language, eye contact, (for lack of a better term) their "uh" and "you know", "well judge ..." (incomplete sentences some times call coded language). Plaintiff believed that the court was there to protect them. Plaintiff became concerned and decided to pick up a book to learn about guardianship in the State of Illinois. Plaintiff states what was happening in the court was not what the Illinois Supreme Court Rules on Probate and the US Constitution said. (1) Plaintiff's father was not in court. Plaintiff mother was never allowed in court 2). there right's were not protected (3) plaintiff's father was illiterate and was allowed to sign papers he could not read (4) guardian et litem was saying that he was mentally deficient and could not make decisions for himself (5) legal papers were delivered to him without his signature (6) the guardian said that plaintiff's father signed papers that put my mom on welfare. Yet he was illiterate (7) guardian had a duty towards my parents to make sure that the paperwork was accurate and correct.

On the first day that plaintiff appeared in Judge Connors court she notified the judge that she had never received any information about court proceedings which violated her constitutional rights to due proceed and equal protection (Amendment 14) and the Interstate Privileges and Immunities Clause. Damage was already done to my mom.

Plaintiff stood up in court on the United States Constitution and the Illinois Supreme Court Rules and "loudly" protested and demanded that the court appoint her parent an attorney to protect his

rights. (the same type of behavior Judge Jones and Attorney Davenport had between themselves).

Plaintiff told the Judge that my father was hearing impaired. The judge told the guardian to get his hearing tested. They did but the refused to use his money to purchase the necessary hearing aided. The court did not provide him with accommodations for his hearing. Plaintiff father, (91 years old) was having back trouble and the guardian said they had to get approval for the purchase of a chair to accommodate his back problems. The court refused to give the approval or the guardian failed to purchase the chair. Plaintiff's parents did not have proper winter clothing. He was refused winter clothing. The US Constitution guarantees rights for all citizen and the guardian had a fiduciary duty towards plaintiff's parents. The guardian, attorney and the court used plaintiff's father's money to pay themselves and not for the benefit of plaintiff's father.

The court had already took control over Plaintiff's mother by having her declared mentally ill when she was only blind and decided that a non related person would be better at take care of plaintiff's parents instead their son. Further the plaintiff's and her parent notice of due process were denied. The court gave the guardian permanent custody of plaintiff mother's body and fiances. The court gave the guardian temporary custody over plaintiff's father body and finances. (the same type of silent behavior).

Then the guardian started legal procedures to take permanent custody of plaintiff's father body and finances. Plaintiff's father was not mentally ill and the court had not found anyone/ doctor to declare him mentally ill. Plaintiff father had been accessed by doctors time and time again and was not determined to be mentally ill. Plaintiff's father right to vote was a stake among other basis human and constitutional rights. The attorney appointed to plaintiff's father was paid $5,000.00 to protect his constitutional rights, out of his life saving, when the Constitution safe guards my father rights, for free.

The DePaul University had a guardian program and the judge got them involved. The people

17

from the University claimed that they were going to help my family. In essence they set my parents up

to be removed from their family. When I demanded that my father have an attorney, Depauls' guardian

program tried to convince my father that she was an attorney and she was trying to help him. At this

time, my father was 89 years old and hard of hearing. The extent that the guardian went to, was

unconscionable and I was embarrassed for her, all of the other attorneys watched in dismay. She got

down on her knees grabbed my father's hand and begged him not to get an attorney. He had already

told her that he wanted an attorney. I told my father he needed an attorney. She tried to pit me against

my father, and in turn my father against me, by having him to take her position. The guardian told my

father that "she is not an attorney, I (guardian) am. "The guardians work for the court and they do not

protect the constitutional right of the disabled, low income, and elderly member of the United States.

Plaintiff had to tell her to get her hands off of her father. Plaintiff then told her, if my mother

was here she would not like you rubbing her husband, so get your hands, once and only again, off of

my father. In court the judge asked my father if he wanted an attorney. He answered, yes and then the

court allowed him to have an attorney which costed him $5,000.00.

The state of Illinois violates elderly, disabled, uneducated, poor peoples constitutional rights.

The State of Illinois discriminated against plaintiff and plaintiffs' disabled parents in probate cases.

The case would not stop "bleeding money from plaintiff's family." The court assigned a

guardian for my parents when their son petitioned the court for guardianship as he had before the court

appointed the guardian. Their son, plaintiff's brother, had to get and pay an attorney to represent him

in getting his parent out of the hands of the guardian and the probate court. After months and months

of litigation the court turned over plaintiff's parents to their son, the natural progression of things. At

this point, the court had allowed the guardian to almost deplete their disabled, elderly parents savings.

The constitution grants Equal Protection under the law. My parents were not protected. I was not

allowed to invoke my constitutional rights.

The guardian, the guardian et litem and the judicial process depleted my parents life saving in turned deprived plaintiff of her inheritance. The plaintiff filed a complaint against the guardians for double billing, excessive billing my parents account, and there was no accounting for plaintiff's parents monthly benefits, social security checks. The guardian had a fiduciary duty to plaintiff's parent and family and they failed. Before the court and the guardian released my parents to plaintiff's brother the court allowed the guardian to negotiated a contract, stating that the guardians would release my parents to my brother, if the family promises to not sue. Everyone in the family was to sign that agreement. Plaintiff refused. The guardian told the judge that plaintiff and another brother refused. Refused.

A hearing was set. Plaintiff was questioning the guardian and saw the attorney signaling the witness by moving her her up and down for yes and side by sign for no, while the judge was on the bench. The witness answers coincided with the attorney's body movements. Plaintiff alerted the judge and the judge told her don't do that.

The judge returned to plaintiff parents account a nominal return of $1,000.00 stating "some irregularities in the accounting" The guardian billed for thousands of dollars (irregularities) then the judge awarded the guardian and their attorney fees for the hearing. When does the losers get fees for their expenses? The court has a duty to safe guard plaintiff's parents constitutional rights. And they failed. The court did not award the plaintiff her fees or damages.

The State of Illinois has unduly burden, discriminated against and penalized the plaintiff while she exercise a fundamental rights in both of the above cases. The "silent" "unspoken" "glaring" "tilling of the head," "eye to eye contact", type behavior is happening in the courts between the judges and some attorneys. Judge Jones practices, procedural and policies in his courtroom violated the plaintiff's constitutional rights. He places himself in a policy maker role.

19

In 1992 Chicago Tribune reported Cook County Circuit Court Judges Sidney A. Jones III Chicago Bar Association said it considers ``not recommended`` for retention in the November election. The bar association's evaluation of Jones, supervising judge there were concerns about his temperament. The Association stated Jones is widely perceived as arrogant, arbitrary and inflexible.``

Jones attributed the negative evaluation to lawyers who don't like the way he has tried to reduce court backlogs. "I think they believe that I am trying to fight with the lawyers or that the standards that are being set are the standards solely of Judge Jones,` said the judge, who also supervises the court's mandatory arbitration program. ``They are not used to the standards, so they take personally any refusal by a judge to give them what they want. That is why we have a backlog, because the lawyers have been running the courthouse instead of the judges.`Hon. Sidney A. Jones III was also been recalled to serve from December 6, 2010 through November 30, 2013. In a search of the Illinois website the plaintiff found approximately 169 cases appealed from the Circuit Court which Judge Jones and other judges presided (details were not provided). Most all of the cases were cases out of arbitration. Out of the 169 cases 155 were reversed and remand or vacated. Approximately 4 or 5 were reversed in part and only 4 were affirmed. Specifically, at least 2 of the cases presided over by Judge Jones were violations of the civil rights of non-English speaking people. And another two were pro se litigants. The search also shows that the Judge tended to violate procedural process and the constitutional rights of litigants, in favor of large insurance companies and English speaking people. The Appellate court notifiable pined "over 120 defendants were deprived of their day in court because the trial court." Judge Jones ignores the Illinois Supreme Court Rules, mandatory arbitration process, and the constitutional rights of others. The State was well aware of Judge Jones practices. He had retired and the court recalled him.

The policy and the practices of the State of Illinois creates an additional obstacle for plaintiff

20

and others to attain access to Illinois public court from one of the state's public institutions that is not

faced by other residents indigent

## COUNT ONE: BREACH OF DUTY TO PROTECT

Each of the foregoing Paragraphs is incorporated as if restated fully herein.

As described in the preceding paragraphs, the conduct of Defendant Judge Jones, the State of

Illinois, acting under the color of law, constituted discrimination in violation of the United States

Constitution. The defendants exercised deliberate indifference to plaintiff's constitutional rights by

failing to provide her with reasonable accommodations even though he had been informed of her

disability . Judge Jones received repeated requests, oral and in writing, from plaintiff and Judge Jones

refused to act upon them. Judge Jones deliberate indifference to plaintiff constitutional rights was

further demonstrated when he ignored plaintiff's disorder at trial when he could see that plaintiff was

using hand signals and nodding of the head to answer questions, plaintiff making involuntary noises,

pauses and body movements.

Judge Jones and the State of Illinois exercised deliberate indifference to plaintiff's

constitutional rights by refusing, for no reason, to authorize accommodations for plaintiff's disability

when they knew that there were serious disability concerns and her access to the court was at risk.

Judge Jones and the State of Illinois exercised deliberate indifference to plaintiff's constitutional rights

by failing immediately to protect plaintiff constitutional rights as soon as they knew the denial and the

need for accommodation was occurring. Instead, these defendants merely acknowledged plaintiff

disability despite seeing that plaintiff was suffering serious violations of her constitutional rights, the

defendants failed to stop the discrimination immediately.

The misconduct described in this count was undertaken pursuant to the policy and practice of

the Cook County Municipal Court in that;

21

a.      As a matter of both policy and practice, Judge Jones and the State of Illinois directly

encourages, and are thereby the moving force behind, the very type of discrimination at issue by failing

to adequately train, supervise and control its courts and judges, such that its failure to do so manifests

deliberate indifference;

b.      As a matter of both policy and practice, the State of Illinois facilitates the very violation

of constitutional rights at issue by failing to punish and discipline prior instance of similar misconduct,

hereby leading Judge Jones and the other defendants to believe their actions will never be scrutinized

and, in that way, directly encouraging future abuses such as those affecting Plaintiff; Specially,

Attorney Davenport and Judge Jones accused of violating plaintiff constitutional rights can be

confident that the professional standards associations they are members of will not investigate those

violations in earnest and will refuse to recommend discipline even where the judge and the attorney has

engaged in the violations of constitutional rights.

c.      Generally, as a matter of widespread practices so prevalent as to comprise Illinois, Cook

county Courts policy and the US constitution , Judge Jones and the State of Illinois violates citizens

rights  in a manner similar to that alleged by Plaintiff in this Count, yet Illinois make no  findings of

wrongdoing in a disproportionately small number of cases;

d.      The State of Illinois policy-makers are aware of, and condone and facilitate by their

inaction, a "code of silence" in the courts, by with judges and lawyers  fail to report misconduct

committed by other judges and attorneys, such as the misconduct at issue in this case;

e.      The State of Illinois has failed to act to remedy the pattern of constitutional violations

describe in the preceding sub paragraphs, despite actual knowledge of the same, thereby causing the

type of constitutional violations alleged here:

f.      As a matter of express policy, the State of Illinois does not provide information to the

general public of allegations of discrimination and constitutional rights against judges and lawyers and

itself, hereby preventing the public/plaintiff from ascertaining any pattern of constitutional right violations which might develop over the course of a judge's and the lawyer's career.

g.    As a matter of express policy, the State of Illinois refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if judges and attorneys is accused of misconduct the Office of Professional Standards or whatever organization is forbidden from considering those allegations if they are deemed unstained; and

h.    The problem with the policy identified in the preceding paragraph is that by it own accounting, which are not always available to the public for review plaintiff could not find the percentages of complaints brought against the state of Illinois, judges and attorneys and insurance companies for violations of civil rights.

i    As a result of the deliberate indifference exercised by the aforementioned defendants, plaintiff suffered serious harm from the discrimination and the negligence by the power to be  Plaintiff also suffered extreme emotional distress from the incident.

As a matter of both policy and practice,the State  of Illinois  facilitates and commits the very type of misconduct at issue here by failing to adequately dispense justice, punish and discipline instances of similar misconduct, thereby leading Judge Jones,  Attorney Davenport and the other defendants to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses.

## COUNT II –STATE LAW CLAIM

Each of the foregoing paragraphs is incorporated as if restated fully herein

Illinois law provides that  public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within their employment activities.

Judge Jones is an employee of the Cook County Court, who acted within the scope of his

23

employment in committing the misconduct described herein.

## COUNT III

### RESPONDEAT SUPERIOR

As described more fully in the preceding paragraphs,  is incorporated as if restated fully herein.

in committing the acts alleged in the preceding paragraphs, Defendant judge was member of the Cook

County Court acting at all relevant times within the scope of his duty.

The State of Illinois is liable as principal for all torts committed by its agents.

## COUNT IV

### 28 U.S.C. §§ 1331  1983 and 1345.

Each of the foregoing Paragraphs is incorporated as if restated fully herein

In the manner described more fully above, Linda Reed was improperly subjected to judicial

proceedings the actions of the defendants  and OCJ staff constituted a violation of the plaintiff's

constitutional rights, undertaken willfully and wantonly proximately cause in Linda Reed's injury. The

State of Illinois and  Judge Jones had a statutory,  and constitutional  duty to disabled persons to

prevent the discriminatory denial of access to a service, program, or activity. Plaintiff's stress is an

additional consequence of the violation of that statutory duty, which is of a different character than a

duty owed to the general population.

The misconduct described in this Count was undertaken with malice, willfulness, and reckless

indifference to the rights of others.  As a result of the violations, Linda Reed sustained the lost of her

rights to a fair trial overseen by a impartial, biased, disinterested  judge.  At the time, Linda Reed had a

reasonable apprehension that her constitutional rights were in danger. Rather,  The State of Illinois and

Judge Jones did not act  affirmatively to eliminate barriers  that would otherwise serve to deny persons

with disabilities access to services, programs, or activities of the court here, access to the Court. All of

the defendants were negligent.  Judge Jones and the State of Illinois could have  reasonably foreseen

that by not providing the accommodations for Linda Reed's disability violated her rights to a fair trial and her rights via ADA. Any reasonable Judge would have provided accommodations for her disability and both defendants had a duty to provide her accommodations. Judge Jones made statements in his MOO with the intent of exerting influence to institute and continue judicial proceedings, appeal process.

### Count III 42 U.S.C. § 1986

### FAILURE TO INTERVENE

Each of the foregoing Paragraph is incorporated as if restated fully herein.

During the violation of Linda Reed constitutional rights, as described more fully above, the State of Illinois, Sanchez, Daniels and Hoffman, Liberty Mutual Insurance Company and Karen Swafford, stood by and watched without intervening to prevent the violation and discrimination to which Linda Reed was subjected. Liberty Mutual Insurance Company, Karen Swafford spared no expense in participating under the color of the law to fiance the violating of Linda Reed's constitutional rights.

As a result of the failure of the Defendants to intervene to prevent the unjustified action, which they funded financially, Linda Reed suffered pain and injury, as well as emotional distress. The Defendants had a reasonable opportunity to prevent the harm had they been so inclined, but failed to do so.

Sanchez Daniels and Hoffman LLP, Liberty Mutual Insurance Company and Karen Swafford acted under color of law and effectuated through purely private conduct. Plaintiff emailed and copied all correspondence to John Huntley, a partner at Sanchez Daniels and Hoffman LLP in an effort to have him intervene. Plaintiff believed that her constitutional rights were being violated due to the misconduct of Sanchez Daniel and Hoffman's and Elaine Davenport. Yet he stood by and watched Attorney Davenport make false statements to the court, withhold information vital to the plaintiff's

case, and offer evidence that they knew was false.  Davenport withheld the oral communication between Judge and herself which is a blatant violation of plaintiff constitutional right and all of the defendants knew about it. .

Liberty Mutual Insurance Company withheld the insurer insurance policy from the plaintiff which the judge ordered them to be turned over to the plaintiff to prove perjury.  When plaintiff complained Judge Jones ignored her.

The defendants in this count are reasonably well-trained individuals (lawyers, liability insurance company) with a "reasonable knowledge of what the law prohibits" would have known that the challenged action violated the plaintiff's Fourteenth Amendment right.

The misconduct described in this Count was undertaken pursuant to the policy and practice of their businesses  in the manner in preceding paragraphs.

Count IV – 42 U.S.C. § 12101(b)(1).

DENIAL OF REASONABLE ACOMMODATION

Each of the foregoing Paragraphs is incorporated as if restarted fully herein.

As described more fully above Judge Sidney Jones III  and The State Of Illinois

In this manner, the conduct of Defendants was objectively unreasonable and deliberately indifferent to Linda Reed's disability and objectively serious need for reasonable accommodation.  The conduct of the defendants Judge Jones and the State of Illinois can not be transcribed by a court reporter.  Plaintiff's use of hand signal and contortions in her face, grunting noises

The misconduct described in this Count was undertaken pursuant to the policy and practice of the State of Illinois and Judge Sidney Jones in the privacy of his courtroom and out of the view of others  in the manner described in preceding paragraphs.

As a result of the State of Illinois and Judge Sidney A. Jones III objectively unreasonable conduct and deliberate indifference to the violation of Linda Reed's necessary accommodations for her

26

disability. Linda Reed suffered additional damages, including but not limited to mental distress and

anguish embarrassment and the exacerbation of plaintiff's untreatable disorder.

The Rehabilitation Act's implementing regulations provide that recipients of federal funds "shall

administer programs and activities in the most integrated setting appropriate to the needs of qualified

handicapped persons." 28 C.F.R. § 41.51(d); *see also* 45 C.F.R. § 84.4.

Specifically, Judge Jones and the State of Illinois know that there are clear  well establish laws

according to  ADA requires that they provide reasonable accommodation for  people with disabilities,

constitutional laws.  Judge Jones made statements in his MOO with the intent of exerting influence to

institute and continue judicial proceedings, appeal process.

Statements of the Defendants regarding Linda Reed's allegation of denial of accommodations.

were made with knowledge that statements were false and perjured.  Attorney Davenport made

statements with the intent of exerting influence to institute judicial proceedings, when she had nothing

to do with accommodations for the plaintiff.

This misconduct described in this Count was undertaken with malice (with evil intent),

willfulness, and reckless indifference to the rights of others.

As a result of this misconduct, Linda Reed suffered injuries, including pain and suffering and

other financial injuries.

The State of Illinois failed to train, supervise, or discipline its employees, OCJ and Judge Jones

and others. Judge Jones denial of plaintiff's accommodation for her disability was attributable to

inadequate training or supervision was deliberate indifference and "gross negligence" on the part of the

officials in charge.  Judge Jones and OCJ erroneously believed that the Judge had discretion when he

denied plaintiff accommodation for her speech and other disabilities.

The State of Illinois practices and policies are  unconstitutional.  The Cook County Court  have

officially adopted a policy  denying disabled litigants reasonable accommodations when they are

27

necessary. The challenged policies and decision disallowing accommodation must have been adopted or promulgated by the Cook County Courts .

## COUNT VII DUE PROCESS

## FOURTEENTH AMENDMENT

Each of the foregoing Paragraphs is incorporated as if restated fully herein.

As described more fully above Judge Jones and the State of Illinois actions before trial, at trial and after trial were arbitrary it "shock the conscience"; and was a violation of plaintiff's substantive due process. Judge Jones was deliberately indifferent to plaintiff's serious accommodation needs to communicate, "shock the conscience"; he acted with malice, that is, with "intent to harm plaintiff and worsen her legal plight. Judge Jones arbitrary decision in favor of the defendant violated plaintiff's statutory, procedural rights and constitutional rights. It has been established he has a history and precedent of this misconduct and the State of Illinois turned their heads and recalled him, to presided in the very court and duty, where he has violated US citizens constitutional rights.

Judge Jones had time for reflection and to decide whether there were liability for deliberate indifference to the plaintiff's constitutional rights. Judge Jones had the luxury enjoyed by judges of having time to make unhurried judgments, upon the chance for repeated reflection, largely complicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking

## COUNT VII  28 U.S.C. §§ 1331

Each of the foregoing Paragraphs is incorporated as if restated fully herein.

As described more fully above Sanchez Daniel and Hoffman, Elaine Davenport, Liberty Mutual Insurance Company and Karen Swafford actions were arbitrary it "shock the conscience"; and was a violation of their duty to the U.S. Constitution. The defendants deliberately indifferent to their duty to prevent the violation of plaintiff's civil rights when they continued to fund the conspiracy, "shock the

conscience"; they acted with malice, that is, with "intent to harm plaintiff and worsen her legal plight. The defendants arbitrary decision in favor of the attorney violated plaintiff's statutory, procedural and constitutional rights establishing that objective considerations, including history and precedent.

Defendants had time for reflection and to decide whether there were liabilities for deliberate indifference to the plaintiff's constitutional rights. The defendants had the luxury enjoyed by the billing of hours billed to them by Sanchez, Daniels and Hoffman and Elaine Davenport of having time to make unhurried judgments and question the actions of the law firm, upon the chance for repeated reflection, largely complicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care and to pay to finance the violation of the plaintiff's constitutional rights indifference is truly shocking.

## COUNT VIII

## INTERSTATE PRIVILEGES AND IMMUNITIES CLAUSE

Each of the foregoing Paragraphs is incorporated as if restarted fully herein.

As described more fully above Plaintiff is an out of state disabled low income citizen who needed access to Cook County Courts, a right fundamental to national unity. The State of Illinois discriminated against plaintiff by not provide services to out of state disabled non residents. Linda Reed was improperly subjected to financial burdens, time, aggravation and stress because the State of Illinois does not accommodate and protect her right under the Constitution. The actions of the defendant constituted a violation of the plaintiff's constitutional rights, undertaken willfully and wantonly proximately cause in Linda Reed's stress. The State of Illinois has a constitutional duty to disabled persons to prevent the discriminatory denial of access to a service, program, or activity. Plaintiff's stress is an additional consequence of the violation of that duty, which is of a different character than a duty owed to the general population.

The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others. At the time, Linda Reed had a reasonable apprehension that her constitutional rights to an appeal were in danger. Rather, The State of Illinois did not act affirmatively to eliminate barriers that would otherwise serve to deny out of state persons with disabilities access to services, programs, or activities of the court here, access to the Court. The defendants were negligent. The State of Illinois could have reasonably foreseen that by not providing the accommodations for Linda Reed's disability violated her rights via ADA. Any reasonable State would have provided accommodations for her disability and had a duty to so.

In this manner, the conduct of Defendant was objectively unreasonable and deliberately indifferent to Linda Reed's disability and objectively serious need for reasonable accommodation.

The misconduct described in this Count was undertaken pursuant to the policy and practice of the State of Illinois.

As a result of the State of Illinois objectively unreasonable conduct and deliberate indifference to the violation of Linda Reed's necessary accommodations for her disability. Linda Reed suffered additional damages, including but not limited to mental distress and anguish embarrassment and the exacerbation of plaintiff's untreatable disorder.

The Rehabilitation Act's implementing regulations provide that recipients of federal funds "shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 41.51(d); *see also* 45 C.F.R. § 84.4.

Specifically, State of Illinois knows that there are clear well establish laws according to ADA requires that they provide reasonable accommodation for people with disabilities.

This misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

As a result of this misconduct, Linda Reed suffered injuries, including pain and suffering and other financial injuries.

WHEREFORE, Plaintiff, Linda Reed respectfully prays that this Court enter judgment with prejudice in her favor and against Defendants, Elaine C. Davenport, Sanchez Daniels and Hoffman and Liberty Mutual Insurance Company, Karen Swafford, Judge Sidney A. Jones III and the State of Illinois awarding compensatory damages and punitive damages, pecuniary damages, in an amount sufficient to compensate her for the pain and mental anguish suffered by her due to the deliberate indifference and intentional misconduct of defendants, but in no event less than $5,000,000, together with her attorneys' fees and costs as well as an order of protection against the defendants. The plaintiff moves this Court to enter a judgment for any and all of her constitutional rights violated by the defendants. .

Plaintiff asked that this court seals plaintiff's medical records which are in the possession and control of all defendants including the case file which is public knowledge. Plaintiff ask this Honorable to require the Cook County Courts to remove from their computers any of the plaintiff's medical records. Plaintiff felt the need to provide the trial court her private medical information in order to gain access to the court.

If this court finds that Judge Jones and the State of Illinois are immune from this complaint the plaintiff Linda Reed request that the other defendants in this case be held liable for the violation of her constitutional rights. There is an appeal pending in the First Appellate Court. Plaintiff ask this court not to surrender federal jurisdiction and retain jurisdiction to permit this court to resolve federal questions if a decision is ultimately necessary, attorney fees and any other relief this court deems appropriate.

**JURY DEMAND**

31

Plaintiff Linda Reed, pro se hereby demand a trial by jury pursuant to Federal Rule of Civil

Procedure 38 (b) on all issues so triable.

Respectfully submitted,

Linda Reed pro se

Linda Reed
9940 West Fond du Lac Ave
Milwaukee, Wisconsin 53224
414-760-0301

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LINDA REED<br>on behalf of herself | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| V. | ) |
| | ) |
| State of Illinois (official and individual capacities | ) |
| Judge Sidney A. Jones III<br>Individual and official capacity, | ) |
| Sanchez Daniel and Hoffman LLP., | ) |
| Elaine Davenport | ) |
| Liberty Mutual Insurance Company and<br>KarenSwafford | ) |

### AFFIDAVIT OF LINDA REED

I, Linda Reed, being duly sworn according to the law depose and say that I am the Plaintiff in the above entitled proceeding.

(1) The claims sought to be litigated have never been raised or disposed of before in any court;

(2) The facts alleged are true and correct;

(3) The plaintiff has made a diligent and good faith effort to determine what relevant case law controls the legal issues raised;

(4) The plaintiff has no reason to believe the claims are foreclosed by controlled law; and

(5) The plaintiff understands that the affidavit is made under penalty of perjury.

All of the information I have submitted in support of my request, Plaintiff's case, etc., is true and correct.

Signature

Sworn to before me this
7th day of Sept , 2018.

NOTARY PUBLIC

JOHN D KOTNIK
Notary Public
State of Wisconsin

My Commission Expires
January 10, 2016

33