**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LINDA REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF ILLINOIS, CIRCUIT COURT | ) |
| OF COOK COUNTY, ILLINOIS; THE | ) |
| HONORABLE SIDNEY A. JONES III, in his | )   Case No. 12-cv-7274 |
| official capacity as Circuit Judge of the Cook | ) |
| County Circuit Court; THE HONORABLE | ) |
| TIMOTHY C. EVANS, in his official capacity | ) |
| as Chief Judge of the Cook County Circuit | ) |
| Court; and MELISSA PACELLI, in her | ) |
| Official capacity as Court Disability Coordinator | ) |
| for the Circuit Court of Cook County, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Linda Reed brings this action against the State of Illinois, the Circuit Court of Cook County and the Honorable Sidney A. Jones III, the Honorable Timothy C. Evans, and Melissa Paccelli, in their official capacities, for violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, *et seq.*, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Reed claims that Defendants failed to accommodate her disabilities in previous state-court proceedings and prevented her from effectively presenting her *pro se* personal injury action to a jury. (*See* R. 41, Am. Compl. ¶¶ 9-33.) Before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. (R. 56, Mot. to Dismiss.) For the following reasons, the Court denies Defendants' motion to dismiss for

lack of subject matter jurisdiction and grants Defendants' motion to dismiss for failure to state a claim.

## BACKGROUND

Reed alleges the following facts in the First Amended Complaint, which the Court assumes as true for purposes of Defendants' motion to dismiss. In 2009, Reed, a resident of Wisconsin, brought a personal injury action in the Circuit Court of Cook County, *Reed v. Moore,* Case No. 09 M1 301249. (*See* Am. Compl. ¶ 15.) Reed represented herself *pro se* in that action. (*Id.* ¶¶ 15-33.) In April 2011, about a month before trial began, Reed was diagnosed with tardive dyskinesia, an untreatable neurological condition characterized by involuntary movements, including tongue thrusting, pursing of the lips, choking, and side-to-side chewing of the jaw. (*Id.* ¶ 9.) Reed also experiences involuntary movements in her body and limbs: she appears jerky, her head moves, and her fingers tap. (*Id.*) Stress worsens Reed's conditions, causing her to become mute, scream, or make non-verbal sounds. (*Id.* ¶ 10.) Reed also suffers from post-traumatic stress disorder and bipolar disorder, which can cause severe anxiety, especially under stress. (*Id.* ¶ 11.)

Trial in Reed's personal injury action began on May 24, 2011. (*Id.* ¶ 16.) Beginning on May 17, Reed made several requests for accommodations during trial to the Court Disability Coordinator for the Circuit Court of Cook County. (*Id.*) Reed requested a note-taker, a podium, the ability to seek recesses as needed, an interpreter to speak for her when she could not speak for herself, a microphone, and an explanation to the jury about her disability. (*Id.*) The court agreed to make the first three requested accommodations, allowing Reed to use a note-taker and a podium and to seek recesses as needed. (*Id.* ¶ 18.) The court, however, denied her requests for

a microphone, an interpreter, and an explanation of her disability to the jury.[1]  (*Id.*)  Reed alleges that the failure to make these accommodations "rendered her communications less effective than her defense attorney counterpart, who [did] not have the same impairments."  (*Id.* ¶ 20.)

Additionally, Reed claims that Judge Jones, who presided over her state-court action, "exacerbated" her conditions and created a hostile environment for Reed through his "constant expressions of exasperation and impatience before the jury."  (*Id.* ¶ 21.)  According to Reed, although Judge Jones knew about her disability, he made remarks about the uncontrollable pauses her condition caused, telling her to "hurry up," and he "glared at Reed, hit his bench, leaned forward at [Reed] and otherwise expressed annoyance with Reed in a way clearly visible to the jury."  (*Id.* ¶¶ 21-22.)  Furthermore, Reed alleges that because she did not receive adequate accommodations, she had to resort to hand signals, grunts, and other non-verbal signals that are difficult to transcribe to communicate at trial.  (*Id.* ¶ 25.)  Reed alleges that, as a result, "she had no opportunity to create an accurate and complete trial transcript."  (*Id.*)

The jury in the state-court proceedings returned a verdict in favor of the defendant.  (*Id.* ¶ 26.)  Following the verdict, Reed filed a motion for a new trial arguing, among other things, that the court had erred in denying her requests for reasonable accommodations.  (*See* R. 61-1, Pl. Mot. for New Trial at 15-16.)  Reed made additional requests for accommodations to argue her post-trial motions.  (Am. Compl. ¶ 27.)  By that point, Reed's condition has worsened, and she could not travel from Milwaukee to argue the post-trial motions.  (*Id.*)  Because Reed could not use a telephone without assistive technology, she requested that the court allow her use text communications to argue her motions.  (*Id.*)  The court denied Reed's requests for a teletypewriter and to allow argument by email.  (*Id.*)  The court offered Reed the option of

---

[1] Judge Jones informed the jury that Reed has a speech impairment, which according to Reed, "was inaccurate and greatly understated Reed's disability."  (*Id.* ¶ 24.)

participating in oral argument using instant messaging.  (*See* R. 61-4, Aug. 2, 2011 Order ¶ 4.)

Reed, however, declined the court's offer because of her lack of knowledge regarding instant

messaging.  (*Id.*)  Judge Jones ultimately decided not to entertain oral argument from either side

due to Reed's difficulty speaking.  (*Id.*)

On September 28, 2011, Judge Jones denied Reed's motion for a new trial, rejecting her

argument that the court had failed to provide reasonable accommodations to allow Reed to

represent herself effectively at trial.  (*See* R. 61-2, Sept. 28, 2011 Memorandum Op. and Order at

5-6.)  Reed appealed the judgment against her to the Illinois Appellate Court in October 2011.

(*See* 61-6, Pl. Appellant Br.)  The appellate court affirmed the judgment against Reed on

November 13, 2012 (*see* 61-5, Nov. 13, 2012 Ill. App. Ct. Order), and the Illinois Supreme Court

denied Reed's petition for leave to appeal on March 27, 2013.  (*See*  R. 61-7 at 2.)

On September 11, 2012, while her state court appeal was pending, Reed filed suit against

Defendants in this Court asserting claims for violation of the ADA and the Rehabilitation Act.

(*See* Am. Compl. ¶¶ 34-37.)  Reed alleges that Defendants failed to take adequate measures to

accommodate her disability, failed to notify her in a meaningful way of her right to

accommodations, and failed to provide sufficient training to judicial officers on their duty to

accommodate *pro se* litigants with neurological and mental disabilities.  (*Id.* ¶¶ 18-25, 27, 29,

31-32.)  According to Reed, Defendants' failures denied her a fair trial at a cost of thousands of

dollars and caused her emotional pain and suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses.  (*Id.* ¶ 33.)

**LEGAL STANDARD**

## I.      Federal Rule of Civil Procedure 12(b)(1)

The standard the Court applies to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. *See Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443-44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.,* 332 F.3d 942, 946 (7th Cir. 2003) (*en banc*), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845 (7th Cir. 2012). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Apex Digital,* 572 F.3d at 443-44; *United Phosphorus,* 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations, the Court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists. *See Apex Digital,* 572 F.3d at 443-44; *United Phosphorus,* 322 F.3d at 946. "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raised the jurisdictional challenge." *Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008).

## II.     Federal Rule of Civil Procedure 12(b)(6)

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted).

Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a complaint must contain sufficient factual content "to allow the court 'to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" *Charleston v. Board of Trs. of Univ. of Ill. at Chicago,* 741 F.3d 769, 772 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Additionally, although a plaintiff need not plead facts in the complaint to defeat potential affirmative defenses, where "the allegations of the complaint itself set forth everything necessary to satisfy [an] affirmative defense," the plaintiff pleads himself out of court. *See Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009).

## ANALYSIS

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly prohibits recipients of federal funding from discriminating against individuals with disabilities. *See* 29 U.S.C. § 794(a). Both provisions allow for enforcement through private causes of action. *See Barnes v. Gorman,* 536 U.S. 181, 185, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002).

Defendants argue that Reed's ADA and Rehabilitation Act claims fail on a number of grounds. First, Defendants argue that the *Rooker-Feldman* doctrine and collateral estoppel bar this Court from deciding Reed's claims. (R. 57, Defs. Mem. at 7-10.) Second, Defendants assert

that absolute judicial immunity prohibits Reed from asserting claims against Judge Jones and any other Defendant against whom Reed asserts claims based on Judge Jones's decisions. (*Id.* at 10-15.) Third, Defendants argue that Amended Complaint fails to state valid claims under the ADA and the Rehabilitation Act. (*Id.* at 16-20.) Finally, Defendants assert that Reed's damages claim fail because (1) the Eleventh Amendment bars monetary claims against state entities and state officials in their official capacity, and (2) Reed lacks standing to seek injunctive relief. (*Id.* at 20-26.) The Court addresses Defendants' challenges to the Court's subject matter jurisdiction before turning to Defendants' arguments for dismissal for failure to state a claim.

## I.  *Rooker-Feldman* **Doctrine**

The *Rooker-Feldman* doctrine[2] "prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the [federal] proceedings commenced." *Brown v. Bowman,* 668 F.3d 437, 442 (7th Cir. 2012) (quoting *Lance v. Dennis,* 546 U.S. 459, 460, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006)); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005) (citing 28 U.S.C. § 1257). The rationale behind the doctrine is that "no matter how erroneous or unconstitutional the state court judgment may be, only the Supreme Court of the United States has jurisdiction to review it." *Brown,* 668 F.3d at 442 (citing *Brokaw v. Weaver,* 305 F.3d 660, 664 (7th Cir. 2002). A state court litigant seeking review of a state court judgment, therefore, "must follow the appellate process through the state court system and then directly to the United States Supreme Court." *Kelley v. Med-1 Solutions, LLC,* 548 F.3d 600, 603 (7th Cir. 2008).

---

[2] The *Rooker-Feldman* doctrine derives from two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

*Rooker-Feldman*, however, is a "narrow" doctrine. *See Lance,* 546 U.S. at 464, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (citing *Exxon Mobil*). In *Exxon Mobil,* the Supreme Court delineated the "limited circumstances" in which the *Rooker-Feldman* doctrine applies by drawing on the facts of *Rooker* and *Feldman*: "In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil,* 544 U.S. at 291, 125 S. Ct. 1517, 161 L. Ed. 2d 454. Accordingly, the *Rooker-Feldman* doctrine applies only when the plaintiff commences a federal action "*after the state proceedings ended*." *See TruSev Corp. v. Flegles, Inc.,* 419 F.3d 584, 591 (7th Cir. 2005) (emphasis in original) (quoting *Exxon Mobil,* 544 U.S. at 291, 125 S. Ct. 1517, 161 L. Ed. 2d 454). Additionally, the doctrine applies only to claims that "seek[] to overturn a state court judgment directly," not independent claims alleging a prior injury that the state court failed to remedy. *See Taylor v. Federal Nat. Mortg. Ass'n,* 374 F.3d 529, 533 (7th Cir. 2004); *see also Dookeran v. County of Cook,* 719 F.3d 570, 575 (7th Cir. 2013) ("*Rooker-Feldman* is only concerned with 'situations in which the state court's decision is the source of the harm that the federal suit is designed to redress." (quoting *Simmons v. Gillespie,* 712 F.3d 1041, 1043 (7th Cir. 2013))).

Reed first asserts that the *Rooker-Feldman* doctrine does not bar this federal action because she filed suit before the proceedings in Illinois state court had ended. (*See* R. 65, Pl. Resp. Br. at 7-9.) As the Supreme Court explained in *Exxon Mobil,* parallel state and federal litigation does not trigger the *Rooker-Feldman* doctrine "simply by the entry of judgment in state court[;]" preclusion law, however, would govern the disposition of the federal action once the state court proceeding is complete. *See Exxon Mobil,* 544 U.S. at 292-93, 125 S. Ct. 1517, 161 L. Ed. 2d 454. Since *Exxon Mobil,* federal circuit courts that have addressed when state-court

proceedings "end" for purposes of the *Rooker-Feldman* doctrine uniformly have held that the state-court proceedings have not ended if a state-court appeal is pending. *See Nicholson v. Shafe,* 558 F.3d 1266, 1279 (11th Cir. 2009); *Guttman v. Khalsa,* 446 F.3d 1027, 1031-32 & n.2 (10th Cir. 2006); *Dornheim v. Sholes,* 430 F.3d 919, 923-24 (8th Cir. 2005); *Mothershed v. Justices of the Supreme Court,* 410 F.3d 602, 604 n. 1 (9th Cir. 2005); *Federación de Maestros de Puerto Rico v. Junta de Relaciones Del Travajo de Puerto Rico,* 410 F.3d 17, 25 (1st Cir. 2005). Although the Seventh Circuit has not addressed this issue in a precedential decision since *Exxon Mobil*, it has cited approvingly to the First, Ninth, Tenth and Eleventh Circuits' interpretation of *Exxon Mobil* in several non-precedential decisions. *See Anderson v. Anderson,* --- Fed. App'x ---, 2014 WL 563792, at *2 (7th Cir. Feb. 14, 2014); *Katherin v. McGrath,* 166 Fed. App'x 858, 862 (7th Cir. 2006); *see also Beasley v. Coleman,* --- Fed. App'x ---, 2014 WL 667078, at *2 (7th Cir. Feb. 21, 2014). The Court, therefore, will follow the rule that *Rooker-Feldman* does not bar federal actions filed while a state-court appeal is pending. Because Reed filed the present action while her appeal in the state-court proceedings was still pending, the *Rooker-Feldman* doctrine does not apply. *See, e.g., Nicholson,* 558 F.3d at 1279; *Guttman,* 446 F.3d at 1031-32 & n.2; *Federación de Maestros de Puerto Rico,* 410 F.3d at 25; *see also Anderson,* --- Fed. App'x ---, 2014 WL 563792, at *2; *Katherin,* 166 Fed. App'x at 862.

Defendants, citing to *Federación de Maestros de Puerto Rico,* argue that the *Rooker-Feldman* doctrine applies despite Reed's pending state-court appeal because Reed failed to challenge the circuit court's denial of Reed's requests for accommodation on appeal. (*See* R. 74, Defs. Reply Br. at 3-4.) According to Defendants, the state court proceedings, therefore, "ended" with respect to Reed's accommodations requests on May 1, 2012 "when she filed an

appellate brief failing to develop [her 'accommodations' arguments]."  (*Id.* at 4.)  The Court disagrees.

In *Federación de Maestros de Puerto Rico,* the First Circuit described three situations in which state-court proceedings "end" for purposes of *Rooker-Feldman.  See* 410 F.3d at 18-20. First, state-court proceedings end "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved."  *Id.* at 18-19.  Second, state-court proceedings end if they reach a point where neither party seeks further action.  *Id.* at 19. For example, if the trial court enters a judgment and the losing party does not appeal, then the state proceedings end when the time to appeal expires.  *Id.*  Third, "if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have 'ended' within the meaning of *Rooker-Feldman* on the federal questions at issue."  *Id.* at 20; *see also Mothershed,* 410 F.3d at 604 n.1 ("Proceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level." (citing *Federación de Maestros de Puerto Rico,* 410 F.3d at 25)).

Defendants claim that this case involves the third situation because Reed failed to challenge Judge Jones's denial of her requests for accommodation on appeal.  Under Illinois law, however, an appellant's failure to raise an argument properly on appeal does not necessarily prevent the appellate court from reviewing the issue, especially where, as here, the appellant is a *pro se* litigant.  *See People v. Jung,* 192 Ill. 2d 1, 9-10, 248 Ill. Dec. 258, 733 N.E.2d 1256 (Ill. 2000) (Freeman, J., concurring) (noting that courts have several possible methods of dealing with a litigant's failure to develop an argument properly on appeal and the "question ultimately

becomes one of discretion for the reviewing court once jurisdiction is found to exist"). While a reviewing court normally should not search the record for reasons to reverse a trial court's judgment, Illinois appellate courts have "authority to address unbriefed issues and may do so . . . when a clear and obvious error exists in the trial court proceedings." *See Mid-Century Ins. Co. v. Founders Ins. Co.,* 404 Ill. App. 3d 961, 966, 344 Ill. Dec. 251, 936 N.E.2d 780 (Ill. App. Ct. 2010) (quoting *People v. Givens,* 237 Ill. 2d 311, 324, 343 Ill. Dec. 146, 934 N.E.2d 470 (2010)). Accordingly, "a reviewing court may, in the exercise of its responsibility for a just result, ignore consideration of waiver and decide a case on grounds not properly raised or not raised at all by the parties." *Id.* (quoting *City of Wyoming v. Liquor Control Comm'n,* 48 Ill. App. 3d 404, 407-08, 6 Ill. Dec. 258, 362 N.E.2d 1080 (Ill. 1977)).

Although Reed did not present Judge Jones's denial of her requests for accommodation as grounds for her appeal (*see* Pl. Appellant Br. at 1-2), she did argue (albeit in conclusory fashion) that the circuit court had denied her reasonable accommodations. (*See id.* at 24 ("The plaintiff is a disabled person. She is speech impaired. She was denied reasonable accommodations.").) Alerted from the party's briefs and the circuit court record to the potential issue regarding the court's alleged failure to accommodate Reed's disability, the Illinois Appellate Court, in its discretion, could have addressed Reed's undeveloped accommodations argument, despite her failure to raise the issue properly on appeal. *See People v. Jung,* 192 Ill. 2d at 9-10, 248 Ill. Dec. 258, 733 N.E.2d 1256 (Freeman, J., concurring); *Mid-Century Ins. Co.,* 404 Ill. App. 3d at 966, 344 Ill. Dec. 251, 936 N.E.2d 780. *Rooker-Feldman* is a "narrow" doctrine, *see Lance,* 546 U.S. at 464, 126 S. Ct. 1198, 163 L. Ed. 2d 1059; *Exxon Mobil,* 544 U.S. at 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454, and the Court will not extend it to apply to a situation where, as here, a state-court appeal was pending when the plaintiff filed her federal

action even if the plaintiff arguably waived the arguments related to her federal action on appeal.[3]

## II.    Judicial Immunity

Defendants next argue that the Court lacks subject matter jurisdiction over Reed's claims for money damages under the doctrine of judicial immunity.  (*See* Defs. Mem. at 10-13; Defs. Reply Br. at 9-13.)  "Absolute judicial immunity shields judicial and quasi-judicial actors from liability for civil damages arising out of the performance of their judicial functions."  *Killinger v. Johnson,* 389 F.3d 765, 770 (7th Cir. 2004) (citation omitted); *see also Polzin v. Gage,* 636 F.3d 834, 838 (7th Cir. 2011) ("A judge has absolute immunity for any judicial actions unless the judge acted in the absence of all jurisdiction.").  This immunity, however, applies only to claims brought against judges or quasi-judicial officers in their individual capacities.  *See DeVito v. Chicago Park Dist.,* 83 F.3d 878, 881 (7th Cir. 1996) (determining that judicial immunity did not bar the plaintiff's ADA claim against the defendant's personnel board in its official capacity). Unlike claims against state officials in their individual capacities, official capacity suits are essentially suits against the state itself.  *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).  Accordingly, "[t]he only immunities available in an official capacity suit are those that may be asserted by the governmental entity itself (*e.g.,* Eleventh Amendment immunity or sovereign immunity)."  *DeVito,* 83 F.3d at 881 (citations omitted); *see also Reed v. Village of Shorewood,* 704 F.3d 943, 953-54 (7th Cir. 1983) (holding that a local judicial officer's immunity did not extend to the village in a § 1983 action).  In this

---

[3] Having found that the *Rooker-Feldman* doctrine does not bar Reed's federal action because the state-court proceedings were still pending when she brought this suit, the Court need not address Reed's argument that the doctrine does not apply because she "attacks no state-court judgment, but only interlocutory decisions in the state-court case that were purely ancillary to the merits."  (*See* Pl. Resp. Br. at 9-12.)

case, Reed asserts claims against Judge Jones, Chief Judge Evans, and Court Disability

Coordinator Pacelli in their official capacities only. (*See* Am. Compl. ¶¶ 6-8.) Judicial

immunity, therefore, does not bar Reed's claims. *See DeVito,* 83 F.3d at 881; *see also Reed,* 704

F.3d at 953-54.

## III. Sovereign Immunity

Defendants next argue that state sovereign immunity precludes Reed from asserting

claims for monetary damages against Defendants in their official capacities. (*See* Defs. Mem. at

22-24; Defs. Reply Br. at 17-19.) Under the doctrine of sovereign immunity, states are immune

from suits for monetary damages in federal courts unless (1) the state consents to the suit or

(2) Congress has abrogated the state's immunity through legislation. *See McDonough Assocs.*

*Inc. v. Grunloh,* 722 F.3d 1043, 1049 (7th Cir. 2013); *Tucker v. Williams,* 682 F.3d 654, 658 (7th

Cir. 2012). A state's sovereign immunity extends to state agencies and state officials acting in

their official capacities. *See Joseph v. Board of Regents of Univ. of Wis. Sys.,* 432 F.3d 746, 748

(7th Cir. 2005) (citing *Will v. Michigan Dept. of State Police,* 491 U.S. at 76, 109 S. Ct. 2304,

105 L. Ed. 2d 45).

Sovereign immunity does not bar Reed's claim under Title II of the ADA. *See Tennessee*

*v. Lane,* 541 U.S. 509, 533-34, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004); *see also United States*

*v. Georgia,* 546 U.S. 151, 159, 126 S. Ct. 877, 163 L. Ed. 2d 659 (2006). Title II of the ADA

provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of

the United States from action in [a] Federal or State court of competent jurisdiction for a

violation of this chapter." 42 U.S.C. § 12202. In *Lane,* the Supreme Court held that, in enacting

this provision, Congress validly abrogated state sovereign immunity for Title II claims

"implicating the fundamental right of access to the courts." *See* 541 U.S. 509, 533-34, 124 S. Ct.

1978, 158 L. Ed. 2d 820; *see also United States v. Georgia,* 546 U.S. at 159, 126 S. Ct. 877, 163 L. Ed. 2d 659 ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." (emphasis in original)).

Although *Lane* specifically dealt with physical barriers that prevented disabled individuals from entering the courtroom, the Supreme Court did not confine its holding to apply only in those limited circumstances. To the contrary, the Court noted that the duty Title II (and general due process principles) imposes on public entities to accommodate individuals with disabilities requires those entities to provide disabled individuals with a "*meaningful* opportunity" to be heard in courts. *Lane,* 541 U.S. at 532, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (emphasis added) ("This duty to accommodate is perfectly consistent with the well-established due process principle that, within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard in its courts."). Here, Reed essentially asserts that Defendants' failures to accommodate her disability prevented her from *meaningfully,* but not completely, participating in the state-court trial and post-trial proceedings. Defendants fail to articulate a plausible reason for why *Lane* would not apply to such claims. After all, what good would come from ensuring that disabled individuals have physical access to a courtroom without also ensuring that they can participate effectively in the proceedings once they arrive? *Cf. Shotz v. Cates,* 256 F.3d 1077, 1080 (11th Cir. 2001) ("A violation of Title II, however, does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. The regulations specifically require that services, programs, and activities be 'readily accessible.'"). Defendants' arguments regarding whether Reed effectively participated in the state-court action and whether the ADA required Defendants to make the accommodations Reed

requested go to the merits of Reed's claim, not to whether sovereign immunity deprives the Court of subject matter jurisdiction.

Sovereign immunity also does not bar Reed's claim under the Rehabilitation Act because Illinois waived sovereign immunity for purposes of the Rehabilitation Act as a condition of receiving federal funds. *See Jaros v. Illinois Dept. of Corrections,* 684 F.3d 667, 672 n.5 (7th Cir. 2012) ("Illinois has waived its immunity from suits for damages under the Rehabilitation Act as a condition of its receipt of federal funds."); *Stanley v. Litscher,* 213 F.3d 340, 344 (7th Cir. 2000) ("We therefore agree with the fourth, ninth, and eleventh circuits that the Rehabilitation Act is enforceable in federal court against recipients of federal largess." (collecting cases); *see also Rittenhouse v. Board of Trs. of S. Ill. Univ.,* 628 F. Supp. 2d 887, 895 (S.D. Ill. 2008) ("With respect to the Rehabilitation Act, Illinois has waived sovereign immunity as a precondition to receiving 'federal largess.'"); *Novak v. Board of Trs. of S. Ill. Univ.,* No. 12-cv-7-JPG, 2012 WL 5077649, at *3 (S.D. Ill. Oct. 18, 2012) (similar). The Court, therefore, rejects Defendants' sovereign immunity arguments.

## IV.    Collateral Estoppel

Turning to Defendants' motion to dismiss for failure to state a claim, Defendants argue that collateral estoppel bars any claims over which the Court has subject matter jurisdiction. (*See* Defs. Mem. at 9-10; Defs. Reply Br. at 7-9.) Collateral estoppel, also known as issue preclusion, "bars relitigation of an issue already decided in a prior case." *In re A.W.,* 231 Ill. 2d 92, 99, 324 Ill. Dec. 530, 896 N.E.2d 316 (Ill. 2008). To determine the preclusive effect of a state-court judgment, federal courts look to the law of the state in which the judgment was rendered. *See Adams v. Adams,* 738 F.3d 861, 865 (7th Cir. 2013). Illinois law, therefore, governs the preclusive effect of the Circuit Court of Cook County's judgment against Reed.

Under Illinois law, three requirements exist for application of collateral estoppel:

> (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Hurlbert v. Charles,* 238 Ill. 2d 248, 255, 345 Ill. Dec. 68, 938 N.E.2d 507 (Ill. 2010) (quoting *Gumma v. White,* 216 Ill. 2d 23, 38, 295 Ill. Dec. 628, 833 N.E.2d 834 (2005)). Reed does not dispute that the second and third requirements are met in this case: the judgment against Reed and the Circuit Court of Cook County's decisions regarding accommodations for her disability at trial became final on March 27, 2013 when the Illinois Supreme Court denied Reed's petition for leave to appeal (*see* R. 61-7 at 2); *see also In re A.W.,* 231 Ill. 2d at 100, 324 Ill. Dec. 530, 896 N.E.2d 316 ("[F]or purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted." (citation omitted)), and Reed is the party who raised the accommodations issue in this case and the state-court action. Reed, however, challenges whether the first requirement regarding the identity of issues is met here. (*See* Pl. Resp. Br. at 12-13.) Furthermore, Reed argues that even if Defendants establish that the threshold requirements for collateral estoppel are met, application of the doctrine in this case would be unjust. (*Id.* at 13.) The Court addresses each argument in turn.

## A. Identity of Issues

In Reed's post-judgment motion for a new trial, she specifically argued that the Circuit Court of Cook County erred in denying her reasonable accommodations in accordance with the ADA. (*See* Pl. Mot. for New Trial at 15-16.) Reed asserted that Judge Jones's treatment of her because of her disability embarrassed her and made her unable to participate in the trial in a meaningful way. (*Id.* at 16.) Reed also raised the court's denial of her requests for reasonable accommodations and alleged failure to inform her of her right to reasonable accommodations in

support of her argument.  (*Id.*)  Reed raises the same "failure to accommodate" issues in support

of her ADA and Rehabilitation Act claims in this action that she raised in her motion for a new

trial in the state-court action.  Reed again argues that Defendants failed to provide her with

reasonable accommodations to allow her to effectively represent herself at trial (Am. Compl.

¶¶ 19-20), that Judge Jones's "constant expressions of exasperation and impatience before the

jury . . . . created a hostile environment for Reed" (*id.* ¶ 21), and that Defendants failed to notify

Reed of her rights under the ADA in a meaningful way.  (*Id.* ¶ 31.)

Judge Jones specifically rejected those arguments in the state-court proceedings when he

denied Reed's motion for a new trial.  (*See* Sept. 28, 2011 Memorandum Op. and Order at 5-6.)

Judge Jones stated, in relevant part:

> The plaintiff finally contends that she was not afforded an accommodation
> of a physical disability.  The plaintiff has been a resident of Milwaukee,
> Wisconsin during all phases of this litigation.  In order to allow for her full and
> meaningful participation, she was allowed to participate by telephone in almost all
> of the pre-trial hearings.  This process worked well, and the parties were always
> able to fully engage in argument on their pre-trial issues.  During each of these
> sessions, the plaintiff always argued her positions thoughtfully and with
> appropriate levels of forcefulness.  Even in spite of sometimes sharp exchanges,
> she was always cordial to both counsel and the court.  Almost immediately before
> the actual trial, the plaintiff began to experience a rapid and noticeable
> diminishment of speech ability so that her speaking was interrupted by
> uncontrollable pauses on account of an apparent nervous disorder that forced her
> into involuntary contortions of the mouth and unintended utterances, most of
> which consisted of unintelligible sounds.  However, she at all times presented
> [sic] as having been fully mentally capable and alert, physically able except for
> the speech condition, and clearly frustrated whenever she experienced such
> interruptions.  It was necessary to take several steps to accommodate her obvious
> speech challenge.  To begin with, she was allowed to have an additional person at
> counsel table to assist her in organizing her voluminous materials during the trial.
> The prospective jurors were asked whether the plaintiff's impediment would
> prevent them from giving the parties a fair trial, and the sworn jury was reminded
> several times not to hold her condition against her or the defendant.  There were
> frequent recesses so that the plaintiff could drink water and otherwise comfort
> herself, and the court was always mindful of her physical challenge to simply
> speak as she intended.  There were occasions when her pauses were so lengthy
> that the court concluded that she was being indecisive rather than laboring under

> the impediment, and she was asked to move on, as would any other individual. At those times, she appeared able to fully respond and proceed in a most functional manner. This court has no doubt but that her readily observable speech impediment concern was accommodated, and that she was thus fully afforded a fair and adequate opportunity to present her case, which she accomplished at a level that far exceeded that of most pro-se litigants in jury trials in spite of her condition.

(*Id.*) Additionally, Judge Jones's orders setting oral argument on Reed's post-trial motions addressed Reed's claims that the court denied her reasonable accommodations to allow her to argue her motions. (*See* R. 61-3, July 7, 2011 Order ¶ 1; R. 61-4, Aug. 02, 2011 Order ¶ 4.) Therefore, with the exception of Reed's "failure to train" contentions (*see* Am. Compl. ¶ 32), the issues Reed raises in this action are identical to the accommodations issues previously decided in the state-court proceeding. *See Hurlbert,* 238 Ill. 2d 248 at 255-56, 345 Ill. Dec. 68, 938 N.E.2d 507; *Illinois Health Maintenance Org. Guar. Ass'n v. Department of Ins.,* 372 Ill. App. 3d 24, 35-43, 309 Ill. Dec. 557, 864 N.E.2d 798 (Ill. App. Ct. 2007).

Reed's argument that the identity of issues requirement is not met here because she "had no cause in her personal injury case to prove that the state court's failure to provide her fair procedures also violated federal civil-rights statutes" (*see* Pl. Resp. Br. at 12-13) is unavailing. Collateral estoppel concerns the relitigation of issues decided in previous actions, not the relitigation of claims, which falls under the purview of the doctrine of *res judicata. See Illinois Health Maintenance Org. Guar. Ass'n,* 372 Ill. App. 3d at 40, 309 Ill. Dec. 557, 864 N.E.2d 798 (noting distinction between collateral estoppel, which involves the identity of issues, and *res judicata*, which involves the identity of claims or causes of action). Therefore, Reed need not have raised a claim specifically for violation of the ADA or the Rehabilitation Act in her state-court action for collateral estoppel to apply; she needed only to have litigated the issue of whether she received reasonable accommodations for her disability. *See Hurlbert,* 238 Ill. 2d at 255-56, 345 Ill. Dec. 68, 938 N.E.2d 507 ("The probable cause issue decided in the statutory

summary suspension hearing is identical to the probable cause issue presented in the instant malicious prosecution action."); *Long v. Elborno,* 397 Ill. App. 3d 982, 991, 337 Ill. Dec. 432, 922 N.E.2d 555 (Ill. App. Ct. 2010) (applying collateral estoppel where the issues in both cases concerned whether the plaintiff had acted with reasonable diligence in serving defendants with her summons and complaint); *Illinois Health Maintenance Org. Guar. Ass'n,* 372 Ill. App. 3d at 35-43, 309 Ill. Dec. 557, 864 N.E.2d 798 (applying collateral estoppel to bar a party from raising defenses that the Department of Insurance director had rejected in a previous administrative proceeding). In the state-court proceedings, Judge Jones specifically decided that, contrary to Reed's arguments in her motion for a new trial, the court had accommodated her disability and had afforded her a fair and adequate opportunity to present her case. (*See* Sept. 28, 2011 Memorandum Op. and Order at 16.) Collateral estoppel bars Reed from relitigating this same issue in this case. *Illinois Health Maintenance Org. Guar. Ass'n,* 372 Ill. App. 3d at 40, 309 Ill. Dec. 557, 864 N.E.2d 798.

Reed also asserts that collateral estoppel does not apply because Defendants failed to show that she pursued an argument in state court based on the federal standards of Title II of the ADA or the Rehabilitation Act. (*See* Pl. Resp. Br. at 13.) This argument is without merit. Reed specifically cited the ADA in her motion for a new trial (*see* Pl. Mot. for New Trial at 15), and section 504(a) of the Rehabilitation Act is nearly identical to Title II of the ADA, except that section 504 applies to programs or activities receiving government assistance whereas Title II applies to public entities. (*Compare* 42 U.S.C. § 12132 *and* 29 U.S.C. § 794.)

### B. Fairness Considerations

Collateral estoppel is an equitable doctrine. *See Nowak v. St. Rita High Sch.,* 197 Ill. 2d 381, 391, 258 Ill. Dec. 782, 757 N.E.2d 471 (Ill. 2001). Accordingly, "[e]ven where the

threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Id.* Reed argues that application of collateral estoppel would be unjust in this case because "due process instructs that judges cannot stand in final review of decisions affecting their own interest." (Pl. Resp. Br. at 13.) Judges, however, routinely make decisions regarding requests for accommodation at trial and other due process challenges to proceedings pending in their courtrooms. Reed had an opportunity to raise Judge Jones's denial of her requests for accommodation and denial of her motion for a new trial on appeal. Reed, however, chose not to do so. There is nothing "unjust" about applying collateral estoppel in this situation.

### C.      Failure to Train Contentions

On a final note, as mentioned above, Reed did not raise the "failure to train" allegations in her Amended Complaint in her state-court action. (*See* Part II.A., *supra.*) In her response brief, Reed explains that her "failure to train" allegations "are not offered as [a] stand-alone claim[]." (Pl. Resp. Br. at 17-18.) Rather, Reed states that she included those allegations in the Amended Complaint "as additional evidence . . . support[ing] [her] claims that defendants fell short of their various duties under the ADA to accommodate her." (*Id.* at 18.)

Reed "cannot avoid preclusion merely by offering evidence in a later action that could have been presented in the initial determination." *See Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.,* 195 Ill. 2d 71, 83, 253 Ill. Dec. 112, 744 N.E.2d 845 (Ill. 2001) ("Offering somewhat difference evidence on what is essentially the same claim will not bar preclusion . . . ." (citing *Lo Russo v. Industrial Comm'n,* 258 Ill. App. 3d 59, 196 Ill. Dec. 208, 629 N.E.2d 753 (Ill. App. Ct. 1994))); *see also Restatement 2d of Judgments* § 27, cmt. c (1982) ("[I]f the party

against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact. . . . And similarly if the issue was one of law, new arguments may not be presented to obtain a different determination of that issue."))).  Therefore, because collateral estoppel precludes Reed from relitigating the issue of whether the circuit court adequately accommodated her disability, Reed's claims under the ADA and the Rehabilitation Act fail even though she has included additional "failure to train" allegations in the Amended Complaint.[4]

### CONCLUSION

For the reasons explained above, the Court denies Defendants' motion to dismiss for lack of subject matter jurisdiction but grants Defendants' motion to dismiss for failure to state a claim.  Collateral estoppel bars Reed from relitigating issues previously raised and decided in her state-court proceedings.  The Court, therefore, dismisses this case with prejudice.


**DATED:  March 10, 2014**                                    **ENTERED**

                                                              AMY J. ST. EVE
                                                              U.S. District Court Judge

---

[4] Because collateral estoppel bars Reed's claims, the Court need not address Defendants other arguments regarding Reed's failure to state a claim or Defendants' argument that Reed lacks standing to seek injunctive relief.