# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA REED, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| STATE OF ILLINOIS; CIRCUIT COURT OF COOK COUNTY, ILLINOIS; THE HONORABLE SIDNEY A. JONES III, in his official capacity as Circuit Judge of the Cook County Circuit Court; THE HONORABLE TIMOTHY C. EVANS, in his official capacity as Chief Judge of the Cook County Circuit Court; and MELISSA PACELLI, in her official capacity as Court Disability Coordinator for the Circuit Court of Cook County, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 12-cv-7274

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants the State of Illinois, the Circuit Court of Cook County, the Honorable Sidney A. Jones III, in his official capacity, and the Honorable Timothy C. Evans, in his official capacity, (collectively, the "State Defendants"), have moved the Court to dismiss the claims of Plaintiff Linda Reed ("Reed") pursuant to Federal Rule of Civil Procedure 12(b)(6). (R.105). Defendant Melissa Pacelli ("Pacelli") has separately moved to dismiss the Complaint. (R.107). For the following reasons, the Court grants the State Defendants' motion as to Plaintiff's claims for injunctive relief, but denies the motion as to Plaintiff's claims for monetary relief. The Court grants Pacelli's motion, dismissing her from this case.

**BACKGROUND**

This action concerns alleged violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, *et seq.*, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. In particular, Plaintiff Reed alleges that Defendants failed to accommodate her disabilities in previous state-court proceedings and prevented her from effectively presenting her *pro se* personal injury action to a jury. (R.41, Am. Compl. ¶¶ 9-33).[1]

On March 10, 2014, this Court denied Defendants' original motion to dismiss on jurisdictional grounds, but granted it on the grounds of collateral estoppel. (R.79) (the "March 2014 Order"). In particular, the Court noted that Reed "raises the same 'failure to accommodate' issues in support of her ADA and Rehabilitation Act claims in this action that she raised in her motion for a new trial in the state-court action," and that the state-court judge—Defendant Judge Jones—"specifically rejected those arguments in the state-court proceedings when he denied Reed's motion for a new trial." (*Id.* at 16-17). The Court further held that fairness considerations did not bar the application of collateral estoppel because "Reed had an opportunity to raise Judge Jones's denial of her requests for accommodation and denial of her motion for a new trial on appeal. Reed, however, chose not to do so." (*Id.* at 19-20). Reed appealed the March 2014 Order.

The Seventh Circuit reversed and remanded, holding that the "threshold requirements of collateral estoppel under Illinois law have been met," but fairness considerations required reversal. (R.95 at 8-12). In particular, the Seventh Circuit reasoned that estopping Reed from re-

---

[1] Reed filed a second amended complaint (R.117) during the briefing of these motions. The second amended complaint does not differ substantively from the first amended complaint. (R.112, Motion for Leave to Amend Compl.). For sake of consistency, the Court looks to the allegations contained in the first amended complaint (R.41) in deciding these motions.

litigating the accommodation issues in federal court would be tantamount to denying her "a full and fair opportunity to vindicate her claims." (*Id.* at 12).

Given its disposition on collateral estoppel grounds, the March 2014 Order did not reach Defendants' other arguments in favor of dismissal. (R.79, Order at 21, n.4). The State Defendants now re-raise those arguments, seeking to dismiss Plaintiff Reed's claims for monetary and equitable relief. (R.106, State Opening Br. at 1-2). Defendant Pacelli raises a separate argument, seeking her own dismissal from the action. (R.107). The Court addresses each motion, in turn.[2]

**LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under federal pleading standards, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]he court must review the complaint to determine whether it contains enough fact to raise a reasonable expectation that discovery will reveal evidence to support liability for the wrongdoing alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). In reviewing a complaint, the Court must accept all "factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to this presumption" of truth. *Id.*

---

[2] The Court assumes familiarity with the factual background of this action, as set forth in the March 2014 Order, and does not recite it here.

# ANALYSIS

I. **The State Defendants' Motion**

   A. **Monetary Relief**

Reed alleges that, as a result of Defendants' ADA and Rehabilitation Act violations, she has "suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. She was also denied a fair trial, at a cost of thousands of dollars in costs and expenses." (R.41, Am. Compl. ¶ 33). Her Prayer for Relief requests an award of "all available legal relief . . . including compensatory damages," but explicitly "disclaims any damages against Judges Evans and Jones." (*Id.* at Prayer for Relief, ¶ C).

   1. **Individual and Vicarious Liability**

The State Defendants first argue that Reed cannot recover monetary damages from Defendants Jones and Evans, named in their official capacities only. Reed does not dispute this fact. Indeed, her Prayer for Relief does not seek such damages in the first instance, explicitly disclaiming any such right. (*See id.*). The Court holds that Reed may not recover such damages.

The State Defendants next argue that, accordingly, Reed cannot recover damages against *any* of the State Defendants based on the alleged actions of Judge Jones or Evans. Plaintiff disagrees, arguing that vicarious liability is a cognizable theory of liability under the ADA and the Rehabilitation Act. The Court notes that, in *City and County of San Francisco v. Sheehan*, the Supreme Court expressly declined to decide this issue: whether a public entity subject to Title II of the ADA "can be held vicariously liable for money damages for the purposeful or deliberately indifferent conduct of its employees." 135 S. Ct. 1765, 1773-74 (2015).

### a.     *Gebser v. Lago Vista Independent School District*

The State Defendants argue that they cannot be held vicariously liable, citing *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998). The *Gebser* Court examined the text, purpose, and scope of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, to hold that a school district is not liable for damages for the conduct of its teachers under a theory of *respondeat superior* alone. *Id.* The *Gebser* Court noted, however, that a school district may be held liable with evidence of its actual notice and deliberate indifference. *Id.* at 292-93. Other decisions—including those relied upon by the State Defendants—recognize this distinction. *See Manuel v. City of Bangor*, No. 09-CV-339-B-W, 2009 WL 3398489, at *3 (D. Me. Oct. 21, 2009) ("[Plaintiffs'] quest to recover money damages from the City of Bangor under Title II [of the ADA] . . . cannot succeed without evidence that persons having supervisory oversight within the relevant city department had notice of the Manuels' allegations of discriminatory treatment yet failed to take reasonable measures to ensure compliance with federal law. Liability . . . cannot be imputed to institutions based merely on the actions of lower-level employees"). Here, Plaintiff alleges direct contact with the Circuit Court's former Disability Coordinator, as well as with Judge Jones. (R.41, Am. Compl. at ¶¶ 9-30). She complains not only about the denial of specific accommodation requests in her trial and post-trial proceedings, but also about Defendants' general failure to notify her of her ADA rights and failure to provide sufficient training to judicial officers regarding accommodation measures. (*Id.* at ¶¶ 31-33). Construed in favor of Plaintiff, therefore, the Complaint sets forth sufficient factual matter "to raise a

reasonable expectation that discovery will reveal evidence to support liability for the wrongdoing alleged." *Adams*, 742 F.3d at 729.[3]

### b. Precedent Imposing Vicarious Liability

In addition, as Plaintiff notes, other courts have found *respondeat superior* liability to apply to lawsuits under Title II of the ADA or section 504 of the Rehabilitation Act. *See Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574-75 (5th Cir. 2002) ("The Fourth, Seventh, Ninth, and Eleventh circuits have all agreed that when a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the [Rehabilitation Act], the public entity is liable for the vicarious acts of *any* of its employees as specifically provided by the ADA") (citing *Rosen v. Montgomery Cnty. Md.*, 121 F.3d 154, 157 n.3 (4th Cir. 1997); *Silk v. City of Chicago*, 194 F.3d 788, 806 (7th Cir. 1999); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *see also Freyre v. Hillsborough Cty. Sheriff's Office*, No. 8:13-CV-02873-T-27, 2014 WL 6885913, at *8 (M.D. Fla. Dec. 5, 2014); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 349 n.10 (11th Cir. 2012) (declining to determine whether *respondeat superior* liability applied to a Rehabilitation Act claim but

---

[3] The State Defendants argue that Reed is not entitled to damages because the former Disability Coordinator's conduct did not rise to the level of "intentional discrimination" or "deliberate indifference" warranting a damage recovery. (R.106, State Opening Br. at 10-11). Although the Seventh Circuit "has yet to decide whether discriminatory animus or deliberate indifference is required to show intentional discrimination[,]" *Strominger v. Brock*, 592 F. App'x 508, 511 (7th Cir. 2014), the Court finds—consistent with other courts in this district—that allegations of deliberate indifference suffice to sustain ADA and Rehabilitation Act damages claims. *See, e.g.*, *Reed v. Illinois*, 119 F. Supp. 3d 879, 885 (N.D. Ill. 2015) (Alonso, J.). Viewed in the light most favorable to Reed, her allegations state a claim of deliberate indifference on the part of both the former Disability Coordinator and Judge Jones. (R.41, Am. Compl. at ¶ 16 (requesting trial accommodations); ¶¶ 27-28 (requesting post-trial accommodations); ¶¶ 7-8 (noting the Disability Coordinator's duties to assist disabled litigants and to evaluate requests for accommodation)); *see also e.g.*, R.95, Seventh Circuit Opinion at 10 ("Many of [Reed's] requests were ignored or denied by the judge, who was at times impatient with and even rude to her; and his conclusion that her disability had been adequately accommodated was untenable")).

noting precedent imposing vicarious liability); *but see cf. Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007) ("Liability under Title VI, which parallels that of Title IX, cannot be imputed to institutions based on the actions of their employees").[4]

The State Defendants argue that these cases are inapposite. In particular, the State Defendants reason that, in affirming *respondeat superior* liability in *Silk v. City of Chicago* and *DeVito v. Chicago Park District*, the Seventh Circuit focused on the employment provisions of the ADA (Title I) – not the public entity provisions (Title II). (R.118, Reply Br. at 8-9). Indeed, *Silk* and *DeVito* each concerned a plaintiff-employee of a municipality alleging employment discrimination based on disability under various federal statutes, including Title I. *See Silk*, 194 F.3d 788; *DeVito*, 83 F.3d 878 (7th Cir. 1996); *see also U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995) ("the actual reason for the 'and any agent' language in the definition of 'employer' was to ensure that courts would impose *respondeat superior* liability upon employers for the acts of their agents").

The Seventh Circuit has further highlighted the "important distinction" between imposing *respondeat superior* liability under employment discrimination statutes versus public entity discrimination statues. *See, e.g.*, *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1023-24, 1034 (7th Cir. 1997) (analyzing Title VII and Title IX and holding that "[b]ecause Title IX only prohibits discrimination by the 'program or activity,' it must be the 'program or activity' and the institution that operates it that discriminate, not merely one of its employees"). The Court

---

[4] Courts have noted the similarities between (*i*) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, (*ii*) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and (*iii*) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. *See, e.g.*, *Liese*, 701 F.3d at 346. Correspondingly, "Title II [of the ADA] directs that its remedies, procedures, and rights shall be the same as those set forth in the Rehabilitation Act. *See* 42 U.S.C. § 12133. In turn, the Rehabilitation Act points to the remedies, procedures, and rights set forth in Title VI [of the Civil Rights Act of 1964]." *Manuel*, 2009 WL 3398489 at *3.

7

further notes that, like Title IX, Title II of the ADA and section 504 of the Rehabilitation Act do not include the terms "employee" or "agent" within the definitions of "public entity" or "program or activity." *Compare* 42 U.S.C. § 12131 and 29 U.S.C. § 794(b) *with* 20 U.S.C. § 1687 ("interpretation of 'program or activity'"); *Smith*, 128 F.3d 1014 at 1024 ("Thus, no basis exists under the statutory language [of Title IX] to hold grant recipients liable based on agency principles").

On the other hand, however, the Seventh Circuit recently recognized that Plaintiff Reed had "stated viable claims" against defendant-hospital under Title II of the ADA and the Rehabilitation Act in the case of *Reed v. Columbia St. Mary's Hospital*, 782 F.3d 331, 337 (7th Cir. 2015). In that case, Reed had sought "compensatory and punitive damages, injunctive relief, and a declaratory judgment" against the hospital based on the conduct of the hospital staff toward her while she was a patient. *Id.* at 334-35. While that opinion does not expressly address vicarious liability under Title II or the Rehabilitation Act, its outcome constrains this Court in finding—as a matter of law at this juncture—that the State Defendants cannot be held liable for damages under a vicarious liability theory. Indeed, other courts in this district have applied *Silk*'s reasoning to impose vicarious liability over ADA and/or Rehabilitation Act claims falling outside of the employment discrimination context. *See Novak v. Hall*, No. 14 C 801, 2015 WL 5768569, at *6 (N.D. Ill. Sept. 30, 2015) ("as Judges Hall and Evans are employed by the County, Cook County is vicariously liable for any violations of the ADA and Rehabilitation Act committed by them"); *Hildreth v. Cook Cty.*, No. 08 C 3506, 2010 WL 1656810, at *5 (N.D. Ill. Apr. 23, 2010) (same) (detainee case); *see also Dickerson v. Rock Island Police Officer Ibrahim Ramirez*, No. 4:13-CV-04003-JEH, 2016 WL 310717, at *3 (C.D. Ill. Jan. 26, 2016) (same) (detainee case).

In any event, the Court need not resolve the question left unresolved by the Supreme Court for purposes of ruling on the State Defendants' motion to dismiss. *See Sheehan*, 135 S. Ct. at 1773-74. Even under *Gebser*'s actual notice and authority standard, the Complaint sets forth sufficient facts to allow Plaintiff's damages claim to proceed to discovery. *See Gebser*, 524 U.S. at 292-93; *cf. Reed v. Vill. of Shorewood*, 704 F.2d 943, 953 (7th Cir. 1983) ("At some level of authority, there must be an official whose acts reflect governmental policy, for the government necessarily acts through its agents").

### 2. Breadth of Damage Remedy

The State Defendants next argue that Reed cannot state a claim for damages because she "only requests damages for emotional distress." (R.106, State Opening Br. at 13). This argument, however, ignores Reed's allegation that she was denied a fair trial, at a cost. She specifically requests an award of "all available legal relief . . . including compensatory damages" resulting from Defendants' ADA and Rehabilitation Act violations. (R.41, Am. Compl. ¶ 33; Prayer for Relief, ¶ C). Such relief is available under Seventh Circuit precedent. *See Columbia St. Mary's Hosp.*, 782 F.3d at 337 ("Compensatory damages are available under the Rehabilitation Act . . . for claims of intentional discrimination"); *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014) (recognizing that "compensatory damages are available in private causes of action under the ADA and Rehabilitation Act . . . [although] punitive damages are not") (citing *Barnes v. Gorman*, 536 U.S. 181 (2002)).

The State Defendants point to federal decisions foreclosing the recovery of emotional distress damages under the ADA and/or Rehabilitation Act. *See, e.g.*, *Khan v. Albuquerque Pub. Schs.*, No. CIV–03–118 JB/RLP, filed December 31, 2003 (Doc. 39) (D.N.M. 2003) ("Applying the *Barnes v. Gorman* analysis, emotional distress damages are not available for an alleged

9

violation of Title II of the ADA or section 504 [of the Rehabilitation Act]"); *Bell v. Bd. of Educ. of Albuquerque Pub. Sch.*, 652 F. Supp. 2d 1211, 1216 (D.N.M. 2008) (citing the same); *see also Gardiner v. Nova Se. Univ., Inc.*, No. 06-60590 CIV, 2006 WL 3804704, at *6 (S.D. Fla. Dec. 22, 2006) (same). As the State Defendants acknowledge, however, other courts have expressly confirmed the availability of emotional distress damages in such cases. *See, e.g.*, *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1198 (11th Cir. 2007) ("The open question before us today is narrower still: whether a subset of compensatory damages—non-economic compensatory damages—is available under § 504 of the Rehabilitation Act for intentional discrimination. We hold that it is"); *Stamm v. New York City Transit Auth.*, No. 04-CV-2163 SLT JMA, 2013 WL 244793, at *7 (E.D.N.Y. Jan. 22, 2013) ("this Court holds that damages for emotional distress are available under Title II"); *Prakel v. Indiana*, 100 F. Supp. 3d 661, 673 (S.D. Ind. 2015) (confirming the availability of a compensatory damage remedy in Title II and Section 504 case, including for emotional distress).

The State Defendants fail to identify any Seventh Circuit authority directly on point. In the absence of any such authority, the Court declines to find, as a matter of law, that Plaintiff is not entitled to emotional distress damages to the extent her claims allege intentional discrimination under the ADA and the Rehabilitation Act. Given the Seventh Circuit's confirmation that compensatory damages *are* available in such cases, *see Columbia St. Mary's Hosp.*, 782 F.3d at 337, the Court denies the State Defendants' motion to dismiss Plaintiff's claims for monetary relief.

### B. Injunctive Relief

Plaintiff additionally requests an award of "injunctive relief to, among other things, correct the state court records in *Reed v. Moore*, Case No. 09 M1 301249, to reflect that [she]

was denied accommodations." (R.41, Prayer for Relief, ¶ B). Plaintiff clarifies that this request seeks "a corrective notation in the [state] court file that the procedures in her case fell short of ADA/Rehabilitation Act standards." (R.109, Response Br. at 10). Plaintiff further clarifies that she seeks prospective relief in the form of "a decree against the State requiring it to afford reasonable accommodations to [her] as a litigant in the Circuit Court." (*Id.* at 13).[5] The State Defendants challenge each request.

### 1. Corrective Notation in State Court Records

The State Defendants first argue that Reed has no standing to seek a correction of state court records. As the Supreme Court has recognized, "psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). Plaintiff Reed does not dispute this principle. Instead, she argues that "correcting a court record . . . serves a larger purpose than merely salving the plaintiff's psyche," pointing to cases in the "parallel field of Title VII." (R.109, Response Br. at 9). Indeed, the Seventh Circuit has recognized that a court "may use expungement as a means of removing the stain of the employer's discriminatory actions from the plaintiff's permanent work history." *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 863 (7th Cir. 2001). The Seventh Circuit, though, also made clear its reasoning: "By refusing to expunge discriminatory or retaliatory discipline from a successful plaintiff's personnel file, a court may force the plaintiff to bear the brunt of his employer's unlawful conduct for the rest of his working career, which certainly contravenes the goal of making a plaintiff whole through equitable remedies." *Id.* at 863-64. Such concerns are not present here. Indeed, Plaintiff Reed identifies

---

[5] In addition, Plaintiff requests a declaration "that the Defendants breached their legal responsibilities and/or duties." (R.41, Prayer for Relief, ¶ A). The State Defendants do not appear to challenge Plaintiff's prayer for declaratory relief.

no ongoing and/or prospective harm which she will suffer if the Court denies her request to make a "corrective notation" on the state court records, especially insofar as the state court matter is now closed. *See Friends of Superior, Inc. v. City of Superior*, No. 06-C-629-S, 2007 WL 5325716, at *2-3 (W.D. Wis. Feb. 23, 2007) (denying plaintiff's requested relief—a declaration that defendant failed to comply with federal laws—where the alleged injury was already complete and therefore non-redressable).

Federalism and comity concerns also distinguish this case from the Title VII cases on which Plaintiff relies. Plaintiff is not asking this Court to order an expungement of personnel files belonging to a private party.[6] Rather, Plaintiff asks this Court to compel a state court official to "correct" state court records regarding state court determinations. This Court questions, in the first instance, whether it has the authority to do so. *See Biggs v. Ward*, 212 F.2d 209, 210-11 (7th Cir. 1954) (noting that a request "to have expunged any and all orders entered" by defendant-judge in the complained-of state court proceeding was "in essence . . . a petition for writ of mandamus, which is not within the District Court's jurisdiction"). Even assuming it has the authority, moreover, the Court must exercise its injunctive powers over state courts with caution. *See Pulliam v. Allen*, 466 U.S. 522, 539 (1984) ("We reaffirm the validity of those [federalism and comity] principles and the need for restraint by federal courts called on to enjoin

---

[6] Nor is Plaintiff asking this Court to expunge state criminal records obtained in violation of federal law. "The principle is well established that a court may order the expungement of records, including arrest records, when that remedy is necessary and appropriate in order to preserve basic legal rights." *Vodak v. City of Chicago*, No. 03 C 2463, 2006 WL 1037151, at *7 (N.D. Ill. Apr. 17, 2006). Plaintiff has not alleged, for example, that the maintenance of records from her personal injury lawsuit "continues to operate to [her] detriment." *See Shipp v. Todd*, 568 F.2d 133, 133 (9th Cir. 1978). Nor has she alleged that this is an "unusual and extreme" case warranting an expungement order. *See id.* at 133 n.1; *see also United States v. Flowers*, 389 F.3d 737, 739 (7th Cir. 2004) (recognizing expungement as an "extraordinary remedy" and noting the "strong public interest in maintaining accurate and undoctored records").

the actions of state judicial officers"). Plaintiff Reed recognizes this principle of restraint, but offers no reasoning (or authority) to justify the imposition of this specific relief. (R.109, Response Br. at 10-11).

Given the non-redressable relationship between Plaintiff's alleged injury and her requested relief, and in light of federalism concerns, the Court grants the State Defendants' motion to dismiss the Complaint insofar as it requests an injunction to "correct the state court records in *Reed v. Moore*, Case No. 09 M1 301249, to reflect that plaintiff was denied accommodations."

### 2. Prospective Injunctive Relief

Plaintiff also seeks prospective injunctive relief "to vouchsafe accommodations for future litigation." (R.109, Response Br. at 11). The State Defendants argue that Reed does not have standing to seek such relief because she fails to allege facts giving rise to an inference that she will suffer future disability discrimination in the Circuit Court. The Court agrees and dismisses this request on mootness grounds.

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing[,]" including (i) injury in fact; (ii) causation; and (iii) redressability. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citation omitted). To establish Article III standing, the injury must be "real and immediate," not conjectural or hypothetical. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Id.* at 103. Further, the injunctive remedy is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Id.* at 111.

13

"Standing is evaluated at the time [the] suit is filed." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 928 (7th Cir. 2013). By contrast, "when a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness." *Id.* (citation and quotation omitted). Under the mootness doctrine, the key inquiry is "whether the requirements for standing continue throughout the existence of the litigation." *Id.* at 930 (citation and quotation omitted). The Seventh Circuit has recognized two exceptions to the general mootness doctrine: (1) where a litigant seeks declaratory relief as to an ongoing policy which "by its continuing and brooding presence, casts . . . . a substantial adverse effect on the interests of the petitioning parties"; and (2) where the challenged conduct is "capable of repetition, yet evading review" -- that is, where the "challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* at 930-33.

### a. Initial Standing

Plaintiff filed this lawsuit on September 11, 2012. (R.1, Compl.). At that time, her state court appeal of the underlying judgment was pending. (R.79, March 2014 Order at 4, 7-11). The Court agrees with Plaintiff, therefore, that she had initial standing to seek prospective injunctive relief regarding Circuit Court accommodations, insofar as the Illinois Appellate Court and/or the Illinois Supreme Court might have remanded the case back to the trial court for further proceedings. *See Milwaukee Police*, 708 F.3d at 928.

### b. Mootness

The question thus becomes whether Plaintiff lost standing as to her claims for prospective injunctive relief after the Illinois Supreme Court denied her petition for leave to appeal the

14

Appellate Court's affirmance in March 2013, thus mooting her current claim for injunctive relief. *See id.*

Plaintiff argues that she continues to satisfy the standing requirements for prospective injunctive relief. In particular, she points to her December 2013 court submission as evidence of her continuing intent to return to the Cook County Circuit Court to handle probate matters. (R.70, Supplemental Response to Initial Motion to Dismiss).[7] The State Defendants, in turn, point out that those probate matters have now concluded. (R.118, State Reply Br. at 2 (citing Plaintiff's Third Am. Compl. in *Reed v. State of Illinois*, 14-cv-02247, R.38 at ¶ 55, filed December 19, 2014)). They further observe that Plaintiff's Complaint "includes no factual allegations establishing that she will likely represent herself again in the Circuit Court." (R.118, Reply Br. at 2).

The Court agrees with the State Defendants. Plaintiff has failed to demonstrate a "real and immediate" threat of future discrimination sufficient to survive a mootness challenge. *See Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001) (dismissing ADA Title II complaint where "the plaintiffs do not allege a real and immediate threat of future discrimination. The complaint contains only past incidents of discrimination"). Plaintiff does not dispute that her Complaint contains no allegations evidencing her intent to return to the Circuit Court. She relies, instead, upon the fact that she returned to the Circuit Court to handle probate matters in late 2013 and "encountered similar difficulties there" regarding her accommodation requests. (R.109,

---

[7] On standing inquiries, district courts "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). In Plaintiff's December 2013 submission, she argued that "[b]ecause she recently learned that she expects to return to Cook County Circuit Court as a *pro se* litigant, she now has standing to seek prospective injunctive relief in this matter." (R.70, ¶ 1).

15

Response Br. at 12). According to her 2014 pleading before Judge Alonso, however, those matters have since closed, and Plaintiff—a Milwaukee resident—offers no other evidence of her intent to return to the Cook County Circuit Court in the future.[8] Absent such evidence, the likelihood of future discrimination remains conjectural and hypothetical and, therefore, insufficient to support Article III standing. *See Lyons*, 461 U.S. at 102; *Wilson v. Hart*, 47 F. Supp. 2d 966, 970 (N.D. Ill. 1999) (dismissing as moot declaratory relief claims against federal judges where the complained-of court proceedings had concluded); *see also Sidiakina v. Bertoli*, 612 F. App'x 477, 478 (9th Cir. 2015) (holding that a Title II litigant's argument that she "may reengage" with the state court system in connection with her divorce proceedings was "too remote and speculative to confer standing"). Applying the "time frame" approach to this case, the Court concludes that any claim for injunctive relief that Reed may have had, originally in 2012 and continuing throughout 2014, is now moot. *See Milwaukee Police*, 708 F.3d at 930.

The Court further finds that no exception to the mootness doctrine applies here to save Plaintiff's injunctive relief claims. Plaintiff argues that, given her "unique history," she "has demonstrated that the State's failure to accommodate is 'capable of repetition, yet evading review.'" (R.109, Response Br. at 13). Yet, to invoke this "narrow exception," she must demonstrate that (*i*) the challenged conduct is "too short to be fully litigated prior to cessation" and (*ii*) "there is a reasonable expectation" that she will be subject to the challenged conduct again. *Milwaukee Police*, 708 F.3d at 932. Plaintiff fails to make this demonstration. Her

---

[8] Nor has Plaintiff alleged facts to support the application of the "deterrent effect doctrine" here. Some courts have recognized an alleged current deterrence as constituting a cognizable "injury in fact" under the ADA for standing purposes. *See Scherr v. Marriot Int'l, Inc.*, 833 F. Supp. 2d 945, 952 (N.D. Ill. 2011). Plaintiff does not make this argument, however, and—even viewed in the light most favorable to Plaintiff—the Complaint does not raise the inference of a deterrent effect with respect to the Cook County Circuit Court.

16

conclusory assertion that "a Circuit Court of Cook County proceeding is likely to conclude before a federal district court can fully adjudicate any related access-to-courts claim," (R.109, Response Br. at 13), is not sufficient to avoid mootness. *See, e.g.*, *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988); *Horton v. Marovich*, 925 F. Supp. 532, 539-40 (N.D. Ill. 1996). The Court is likewise not convinced that Plaintiff's personal "history" in the Cook County Circuit Court—one personal injury action, and one probate matter—creates a "live controversy" for purposes of Article III standing, especially insofar as there is insufficient evidence to raise a "reasonable expectation" that she will return to that courthouse. *Contra Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999) ("[I]n view of the multiple institutional placements [Title II institutionalized plaintiffs] have experienced, the controversy they brought to court is 'capable of repetition, yet evading review'"); *Cooper v. Kliebert*, No. CIV.A. 14-507-SDDSCR, 2014 WL 7334911, at *5 (M.D. La. Dec. 19, 2014) (rejecting mootness challenge where, although original Title II plaintiffs were accommodated during the pendency of the litigation, a "similarly situated plaintiff . . . who remains incarcerated . . . intervened"). In any event, Plaintiff's chief claim—that Defendants failed to accommodate her as required under the ADA and the Rehabilitation Act—does not "evade review." That claim "remains to be litigated in [her] suit for damages." *See Lyons*, 461 U.S. at 109. For these reasons, Plaintiff cannot rely on the "capable of repetition, yet evading review" doctrine to save her injunctive relief claims from a mootness fate.

In addition, Plaintiff does not qualify for the mootness exception concerning challenges to ongoing policies. *See Milwaukee Police*, 708 F.3d at 930-32. As an initial matter, Plaintiff fails to challenge a specific policy of the Circuit Court. Even construing, however, her standalone "failure to notify of ADA rights" and "failure to train in ADA compliance" allegations as official "policies" of the Circuit Court, Plaintiff does not allege that such policies

17

are continuing, let alone that they cast a "brooding presence" with a "substantial adverse effect" over Plaintiff and/or other litigants. *See Milwaukee Police*, 708 F.3d at 933. This exception to the general mootness doctrine, thus, does not apply here.

Because Plaintiff has failed to allege facts giving rise to an inference that she will suffer future discrimination on the part of the State Defendants, and because no exception to the general mootness doctrine applies here, the Court grants the State Defendants' motion to dismiss the Complaint insofar as it requests prospective injunctive relief.[9]

## II.     Pacelli's Motion

Defendant Pacelli separately seeks dismissal from this case under the Seventh Circuit's decision in *Stanek v. St. Charles Community Unit School District No. 303*, 783 F.3d 634 (7th Cir. 2015). (R.107). In *Stanek*, the Seventh Circuit affirmed the district court's dismissal of official-capacity individual defendants in a Title II lawsuit where the plaintiffs also sued the public entity directly. 783 F.3d at 644 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001)). As Plaintiff acknowledges, *Stanek* thus "stands for the proposition that a court does not err when it dismisses official-capacity defendants otherwise redundant to the case." (R.109, Response Br. at 14). Indeed, Judge Alonso recently dismissed Plaintiff's ADA and Rehabilitation Act claims against certain official-capacity defendants, including Pacelli, on these grounds. *See Reed v. Illinois*, 119 F. Supp. 3d 879, 883 (N.D. Ill. 2015).

---

[9] Given its disposition of Plaintiff's injunctive relief claims, the Court does not address the State Defendants' remaining arguments concerning the Federal Courts Improvement Act of 1996.

Plaintiff does not dispute that her claims against Pacelli are redundant of those she asserts against the State Defendants.[10] Instead, she advocates against dismissal because "any prospective relief this Court may enter could involve Ms. Pacelli's office, *e.g.*, improving its procedures and training judicial and court personnel." (R.109, Response Br. at 15). Given the dismissal of Plaintiff's injunctive relief claims, however, the Court does not weigh this consideration in its *Stanek* analysis. Because Pacelli is a Circuit Court employee, and the State of Illinois her employer, *see Orenic v. Illinois State Labor Relations Bd.*, 127 Ill. 2d 453, 476, 537 N.E.2d 784, 795 (1989) ("the State . . . is the sole employer of all court employees"), and because Plaintiff has sued the State of Illinois directly under the ADA and the Rehabilitation Act (which provide only for employer liability, not individual liability, *see Silk*, 194 F.3d at 797 n.5, 798 n.7), the Court grants Pacelli's motion to dismiss. The Court hereby dismisses Pacelli from this case.

## CONCLUSION

For the foregoing reasons, the Court grants the State Defendants' motion as to Plaintiff's claims for injunctive relief, but denies the motion as to Plaintiff's claims for monetary relief. (R.105). The Court grants Defendant Pacelli's motion, dismissing her from this case. (R.107).

**Dated:** May 9, 2016

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge

---

[10] Indeed, the Complaint does not allege any conduct on the part of Pacelli. (R.41).